## SETH CARTER v. THE STATE.

No. 1502. Decided May 25, 1898.

Motion for Rehearing Decided December 7, 1898.

**1. Indictment—Motion to Set Aside—Grand Jury—Failure to Select Negroes Upon.**

Article 550, Code of Criminal Procedure, provides the only grounds upon which a motion to set aside an indictment or information can be based. The fact that people of African descent are not drawn by the commissioners to serve upon the grand jury is not a ground for setting aside an indictment. [But see infra, paragraph 10.]

**2. Grand Jury—Challenge.**

Objections to the grand jury, or any member thereof, should be exercised by challenge to the array or to the particular juror, as provided in article 397, Code Criminal Procedure. It is too late, after indictment found, to question the manner of impaneling the grand jury. [But see infra, paragraph 9.]

**3. Indictment—Motion to Quash—Trial Jury—Challenge to Array—Failure to Select Negroes Upon.**

It is not a ground for challenge to the array of the trial jury that it is composed of white men exclusively; and it is no ground for a motion to quash a special venire or of challenge to the array that the jury commissioners selected jurors solely from persons known not to be of the same race and equals of the accused, but his superiors. Following Cavitt v. State, 15 Texas Criminal Appeals, 190. [But see infra, paragraphs 10, 11, and 12.]

**4. Evidence—Diagram, Map, or Plat.**

It is proper and legitimate, for the purpose of explaining the testimony of witnesses and rendering it more intelligible, and also for the purpose of enabling the jury to better understand and apply the evidence with reference to the localities testified about, to introduce in evidence a diagram, map, or plat of the locus in quo. Following Rodriquez v. State, 32 Texas Criminal Reports, 259.

**5. Murder—Name of Deceased—Variance.**

On a trial for murder, where the indictment alleged the name of deceased to be Bertha Brantley, and it appeared that she was commonly known and called by that name, the fact that a few days before the homicide she obtained a divorce from her husband, and by which her name was changed from Brantley to Browning, her maiden name, did not constitute a variance in the proof as to her name.

**6. Same—Insanity—Charge—Requested Instructions.**

Where, on a trial for murder, the defense was insanity, and the court has given a charge upon insanity framed after approved forms, but also an instruction requested on the subject by defendant, as follows, viz: "It devolves upon the State to prove

every material issue of fact in this case beyond a reasonable doubt, except the issue of defendant's sanity or insanity at the time of committing the crime charged; and upon that issue the burden is upon the defendant to satisfy you that he was affected with insanity, and by reason thereof did not know the difference between right and wrong as to the act charged against him at the time he shot and killed deceased, before you will be authorized to acquit him;" Held, it was not necessary to repeat this phase of the law in further instructions.

### 7. Same—Charge—Singling Out Particular Facts.

It is not incumbent upon the court in its charge to single out, specify, or group any particular facts and specially call the attention of the jury to them; nor is it the province of the court to sum up the facts and call special attention of the jury to the force and effect of certain facts, unless required to do so by statute.

### 8. Murder in the First Degree—Evidence Sufficient.

See the opinion for facts summarized, which the court hold sufficient to support a verdict and judgment for murder in the first degree, inflicting the death penalty.

ON MOTION FOR REHEARING.

### 9. Grand Jury—Race Discrimination in Selection of—Challenge to Array—Fourteenth Amendment to United States Constitution.

The fourteenth amendment to the Constitution of the United States, and statutes passed thereunder, would seem to make race discrimination in the organization of a grand jury a ground of challenge to the array; and the question should be raised by motion to challenge the array.

### 10. Same—Motion to Quash Indictment—Practice.

Where no opportunity was afforded defendant to challenge the array of the grand jury, because it had been organized and impaneled before the date of the commission of the offense, it seems that, under the Federal procedure, it was proper practice to move to quash the indictment on account of race discrimination in the selection of the grand jury, this being his first opportunity to test the question. Under our statute, the question should be raised in such case by a motion to set aside the indictment, or by special plea.

### 11. Same—Constitutional Question—Special Plea—Practice.

A fundamental question arising under the Constitution of the United States can be made by special plea outside of our statute. Article 561, Code of Criminal Procedure, prescribing what special pleas shall be allowed, is not exclusive of other fundamental constitutional grounds.

### 12. Same—Race Discrimination—Equal Protection—Fourteenth Amendment United States Constitution.

With regard to the subject of race prejudice in the impanelment of juries, the rule as adopted by the Supreme Court of the United States is, that if, in the administration of the law fair upon its face and presenting no discrimination between the races, it is so administered in the impanelment of the grand jury as to entirely ignore and discriminate against colored citizens to sit on the grand jury, it would be violative of that provision of the fourteenth amendment to the Constitution of the United States, guaranteeing equal protection of the laws to all citizens. And the decisions of the Supreme Court of the United States are the law upon the subject.

### 13. Same—Motion to Quash Indictment.

Where a motion to quash an indictment on account of race discrimination in the organization of the grand jury was only supported by the affidavit of defendant, and the bill of exceptions simply states that the defendant offered to introduce witnesses, which the court refused to permit him to do, but no witnesses are named nor is it shown that any were tendered; Held, the motion to quash was properly overruled.

### 14. Motion to Quash Special Venire.

After the jury has been selected, duly accepted by both parties, impaneled, and sworn according to law, a motion to quash the special venire comes too late.

APPEAL from the Criminal District Court of Galveston. Tried below beore Hon. E. D. CAVIN.

Appeal from a conviction for murder in the first degree; penalty, death.

The attendant circumstances upon the killing are concisely but clearly stated in the latter portion of the opinion below.

*Wilford H. Smith,* for appellant.—The court erred in overruling defendant's motion in arrest of judgment, setting up that there was a fatal variance between the allegation in the indictment and the proof as to the name of the injured party, the proof being that she had been married to one Brantley, by whose name she went, until the 12th day of November, 1897, when by a decree of divorce in the District Court of Galveston County, Texas, her name was changed to Albertha Ruth Browning. Milontree's Case, 16 S. W. Rep., 764; Henderson's Case, 38 S. W. Rep., 618.

The court erred in permitting the State's attorney to introduce evidence, over the objection of the defendant, to the effect that the deceased was generally known by the name of Bertha Brantley, after the defendant had shown that by the decree of the District Court of Galveston County, rendered on the 12th day of November, 1897, her name had been changed to Albertha Ruth Browning.

The court erred in overruling defendant's motion to quash the indictment, and to quash the panel of petit jurors impaneled to try said cause, on the ground that the jury commissioners appointed to select the grand jury which found and presented said indictment, and the jury commissioners appointed to select the list of petit jurors from which the present panel were drawn, selected no persons of color or of African descent, known as negroes, to serve on said grand or petit jury, but on the contrary did exclude therefrom all persons of color or of African descent, known as negroes, because of their race and color, and that said grand and petit jurors were composed exclusively of persons of the white race, while all persons of the colored race, or persons of African descent known as negroes, although consisting of and constituting about one-fourth of the population and of the registered voters in said city and county of Galveston, and although otherwise qualified to serve as such grand and petit jurors, were excluded therefrom on the ground of their race and color, and have been so excluded from serving on any jury in said Criminal District Court for a great number of years, which is a discrimination against the defendant, since he is a person of color and of African descent, known as a negro, and such discrimination is a denial to him of the equal protection of the laws and of his civil rights guaranteed by the Constitution and laws of the United States; which motions were signed and sworn to by the defendant, and were uncontradicted by any evidence whatever. Gaines' Case, 39 Texas, 606; Neal v. Delaware, 103 U. S., 370; Gibson v. Mississippi, 162 U. S., 565.

The court erred in refusing to permit the defendant to introduce evidence in support of his motions to quash the indictment, and to quash the panel of petit jurors impaneled to try said cause, and in disposing of

said motions without a hearing upon and an investigation of the matters of fact therein alleged.

After the first opinion of the court affirming the judgment in the case, the following brief was also filed in support of the motion for rehearing, by Wilford H. Smith:

This court in their opinion discuss this case entirely from the standpoint of the State statutes, wholly ignoring the Constitution and laws of the United States and the decisions referred to in the brief of appellant.

Manifestly, the question here raised is purely Federal, and the Constitution and laws of the United States and the decision of the United States Supreme Court alone must be looked to for any proper light on the subject.

The appellant relies upon the first section of the fourteenth amendment to the Constitution of the United States, and the decisions thereunder, for the protection which he claims and the rights which he holds were denied him in the trial court, all provisions of the statutes of our own State to the contrary notwithstanding. 14th Amend. Const., U. S., sec. 1; Supp. Rev. Stat. U. S., vol. 1, chap. 114, sec. 4; Neal v. Delaware, 103 U. S., 370; Gibson v. Mississippi, 162 U. S., 565.

Clearly, upon the plainest principles of common sense and justice, when the trial court refused to permit the appellant to introduce his evidence in support of his motions to quash the indictment and the panel of petit jurors, it was equivalent to, and should be held to be, an admission by the State that the allegations of said motions were true. With an admission that negroes were denied and refused the right to sit on the grand and petit juries in said Criminal District Court of Galveston County, Texas, because of their race and color, then clearly the provision of the fourteenth amendment to the Constitution of the United States, which appellant invokes, has been violated by the State of Texas through its tribunal.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—The indictment charged appellant with killing Bertha Brantley by shooting her with a pistol; he was convicted of murder in the first degree, his punishment assessed at death, and prosecutes this appeal.

When the case was called for trial, a motion was made to quash the indictment because the jury commissioners had not drawn persons of African descent as jurors to serve upon the grand jury. Article 559, Code of Criminal Procedure, provides: "A motion to set aside an indictment or information shall be based on one or more of the following causes, and no other: (1) That it appears by the record of the court that the indictment was not found by at least nine grand jurors; * * * (2) that some person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or

were voting upon the same." If this motion has any merit in it at all, it relates, not to the substance of the indictment, but to the manner of its finding and presentment. So it will be seen, by the very terms of the statute itself, that the fact that people of African descent were not drawn by the commissioners to serve as jurors upon the grand jury is not a ground for setting aside an indictment. Article 397 of the Code of Criminal Procedure provides: "Any person, before the grand jury has been impaneled, may challenge the array of jurors, or any person presented as a grand juror, and in no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall, upon his request, be brought into court to make such challenge." Appellant does not undertake to bring himself within the purview of this statute. His motion was to quash the indictment. If there were any objections to the grand jury, or any member of it, they should have been exercised by challenge, either to the array or to a particular member of said body. See Barber v. State (decided at the present term), 46 S. W. Rep., 233. The question of challenge to the array, or to a particular juror, is not suggested, nor is it shown that he was debarred this right. It is too late, after indictment found, to question the manner of impaneling a grand jury.

Motion was also made to quash the special venire because the jury commissioners had not selected any persons of African descent to serve as jurors upon the trial of cases to be tried at the succeeding term of the court after the jurors were drawn by said jury commissioners. This was urged in the nature of a challenge to the array. Article 661 of the Code of Criminal Procedure provides: "The defendant may challenge the array for the following causes only: That the officer summoning the jury has acted corruptly, and has willfully summoned persons upon the jury known to be prejudiced against the defendant with a view to cause him to be convicted." This statute only applies when the jurors have been selected by the sheriff, and not drawn by the jury commissioners; for article 662 declares that: "The two preceding articles do not apply when the jurors summoned are those who have been selected by jury commissioners. In such case no challenge to the array is allowed." This is not a novel question in this State. As far back as 44 Texas it was held that, where the defendant is a negro, it is not a ground of challenge to the array that it is composed of white men exclusively. Williams v. State, 44 Texas, 34. So it has been held that it is not a ground for a motion to quash a special venire, or of challenge to the array, that the jury commissioners selected jurors solely from persons known to be not equals of the accused, but his superiors. See Cavitt v. State, 15 Texas Crim. App., 190. There was no error on the part of the court with reference to either of the above bills of exception.

On the trial, and while Dennis Brantley was on the witness stand, the State introduced a drawing made by said witness. This drawing is a map or diagram of the house where the killing occurred, and is shown to be correct. The objection urged was that the drawing was made by an

interested person, and was not correct; but the testimony shows, without contradiction, that it was correct. It is immaterial who made the map or diagram—whether an interested or disinterested party. If the map was not a correct one, this fact could be shown; and the defendant, if he desired, could attack the map by showing its incorrectness, and supply the defects by putting in evidence one of his own. So far as we are advised, it has always been held proper and legitimate, for the purpose of explaining the testimony of the witness, and rendering it more intelligible than it would have been otherwise, to introduce diagrams, maps, and plats. It also serves the purpose of enabling the jury to better understand and apply the evidence with reference to various localities spoken of by the witnesses. This question underwent an investigation in the case of Rodriquez v. State, 32 Texas Criminal Reports, 259, and it was there held that such maps could be properly introduced in evidence.

The State introduced the witness Elizabeth Browning, and by her proved that the deceased was her sister, and that at the time of her death she was commonly called and generally known by the name of Bertha Brantley, and was called by that name by all the people who knew her. This was objected to upon the ground "that the solemn records of the District Court of Galveston County showed that the deceased, by a decree of that court, had her name changed to Albertha Ruth Browning on the 12th of November, 1897, and that it was not proper to dispute the record evidence in that manner." It may be stated that the evidence does show that the deceased obtained a divorce from her husband, Dennis Brantley, and by the decree of said District Court her name was changed from Brantley to Browning, her maiden name. This occurred a few days prior to the homicide. This, however, was not known by members of her own family. But this would be immaterial. If her name had been in fact, independent of the decree of divorce, Albertha Ruth Browning, but she was commonly and generally known by the name of Bertha Brantley, the allegation in the indictment that such was her name would be sufficient. The unbroken line of decisions in this State are to this effect. This testimony was introduced to meet the supposed variance caused by the introduction of the decree of divorce.

Appellant requested the court to charge the jury that if they believed from the evidence that, at the time the defendant shot and killed deceased he was not of sound mind, but was affected with insanity, and such affection was the efficient cause of the act, and that he would not have done so but for that affection, or if they believed that at the time the prisoner had not sufficient use of his reason to control the emotions which prompted him, they should acquit on the ground of insanity. This was refused by the court. There was no error in this. The court gave a charge on insanity in language which has been often approved by this court, and in addition, at the request of appellant, gave the following charge: "The court instructs the jury that it devolves upon the State to prove every material issue of fact in this case beyond a reasonable

doubt, except the issue of the defendant's sanity or insanity at the time of committing the crime charged; and upon that issue the burden is upon the defendant to satisfy you that he was affected with insanity, and by reason thereof did not know the difference between right and wrong, as to the particular act charged against him, at the time he shot and killed deceased, before you will be authorized to acquit him." So the court not only gave a proper charge, but gave the above charge at the request of appellant. It was not necessary to repeat this phase of the law in further instructions.

Appellant requested the following instructions: "The jury are instructed that they may take into consideration the evidence of the prisoner's previous good character, also the circumstance of whether he really intended to take his own life at the time he shot and killed deceased, in connection with all the other facts and circumstances, for the purpose of enabling you to determine the mental condition of the prisoner at that time." As before stated, the court gave a proper charge upon the law of insanity, and instructed the jury that they were to determine from the evidence in the case this question of insanity, it being a question of fact for their determination. We do not believe that it was incumbent on the court to single out, specify, or group any particular facts, and specially call the attention of the jury to them. It is not the province of the court to sum up the facts, and call special attention of the jury to the force and effect of certain facts, unless under some statute authorizing or requiring him to do so.

It is also contended that the verdict of the jury is contrary to the law and against the evidence. The statement of facts discloses that the deceased, Bertha Brantley, and Dennis Brantley had been husband and wife. They had been living apart for some months, and a few days prior to the homicide the deceased had obtained a divorce from her husband. It is further disclosed that the appellant had been the paramour of Bertha, the deceased, and had been very intimate with her, for some two or three years prior to the homicide, and while she was still the wife of Dennis Brantley, and that they were infatuated with each other is placed beyond question by the testimony. Letters from the deceased to the appellant are incorporated in the record, showing her almost absurd infatuation with him. Appellant became jealous of the deceased, and, it would seem, because of the approaching remarriage of Dennis Brantley and the deceased. On the evening of the homicide there was a social gathering at one Maguire's. Dennis Brantley and the deceased attended that gathering, and, while they were sitting upon the side of the bed in one of the rooms, appellant made his appearance at the door of the room, and asked for a private interview with the deceased. She requested him to approach where she and her former husband were sitting, and hold the interview with her at that place. This he declined, and insisted upon a private interview. Dennis Brantley thereupon left the room, so that appellant might have the desired interview. A low conversation occurred between appellant and deceased. She left him, and approached the door

of the adjoining room—the kitchen; and while standing at that point, talking, appellant approached her from behind, and shot her in the head. She fell upon the floor, and he fired three or four shots at her prostrate form, killing her. He left his hat by his victim, and fled. He went thence to his mother's residence, and finally appeared at the police station, and surrendered to the officers. When he arrived there his throat was cut, and, it was thought, fatally. He admits this cutting, saying that he desired to die. His hat was found, with a bullet hole through it from front to rear, but the ball missed his head. This ball, he says, he fired himself at the time he killed deceased. These are the salient facts and are not questioned. We believe this evidence justified the verdict of the jury, and we deem it unnecessary to comment upon the testimony. The judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.

### ON MOTION FOR REHEARING.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, with the death penalty affixed, and prosecuted an appeal to this court. The judgment of the lower court was affirmed at the last Austin term, 1898, and now comes before us on motion for rehearing.

The points relied on in the motion for rehearing are (1) the action of the court below in overruling appellant's motion to quash the indictment on account of the method pursued in impaneling the grand jury; and (2) the refusal of the court to entertain appellant's motion to quash the panel of petit jurors selected to try the case. Both questions were presented on the submission of the case, and we decided against appellant, in accordance with the provisions of our statute. While our attention was called to the Federal Constitution on this subject, it was not discussed by us. Our attention is again called to this matter, and it is urgently insisted that the impanelment of both the grand and petit juries was in violation of that provision of the fourteenth amendment to the Constitution of the United States, and the Federal statutes passed in pursuance thereto, which guaranty to all persons, regardless of race, color, or previous condition of servitude, the equal protection of the laws.

We will quote so much of the bills of exception as it is contended present the Federal questions:

"Bill No. 1. Be it remembered, that on the 17th day of March, 1898, the above entitled and numbered cause was called for trial, and defendant in open court, before he was arraigned, and before pleading to the indictment, presented and read to the court the following motion to quash said indictment, to wit: 'And now comes the said defendant, in his own proper person, and moves the court to set aside and quash the indictment herein against him, because the jury commissioners appointed to select the grand jury which found and presented said indictment selected no person or persons of color or of African descent, known as "ne-

groes," to serve on said grand jury, but, on the contrary, did exclude from the list of persons to serve as such grand jurors all colored persons or persons of African descent, known as "negroes," because of their race and color; and that said grand jury were composed exclusively of persons of the white race, while all persons of the colored race, or persons of African descent, known as "negroes," although consisting of and constituting about one-fourth of the population and of the registered voters in said city and county of Galveston, and although otherwise qualified to serve as such grand jurors, were excluded therefrom on the ground of their race and color, and have been so excluded from serving on any jury in said Criminal District Court for a great many years, which is a discrimination against the defendant, since he is a person of color, and of African descent, known as a "negro;" and that such discrimination is a denial to him of the equal protection of the laws, and of his civil rights guarantied by the Constitution and laws of the United States. All of which the defendant is ready to verify. [Signed] Seth Carter. Sworn to and subscribed before me this 13th day of January, 1898. Florence D. Atkins, Notary Public in and for Galveston County, Texas. [Seal.]' After reading the said motion the defendant asked leave of the court to introduce witnesses, and offered to introduce witnesses, to prove and sustain the allegations therein made; but the court refused to hear any evidence in support of the said motion, and thereupon overruled the same, without investigating into the truth or falsity of the allegations of said motion,—to which action of the court the defendant then and there excepted, and tenders this, his first bill of exceptions," etc.

"Bill No. 2. Be it remembered, that on the 17th day of March, 1898, at the trial of the above entitled case, after the jury had been selected, duly accepted by both parties, and impaneled and sworn according to law to try said cause, but before the introduction of any evidence in the case, the defendant presented and read to the court the following motion to quash the panel of petit jurors selected to try said case to wit: 'And now comes the said defendant, in his own proper person, and moves the court to set aside and quash the panel of petit jurors selected and summoned to try him in the case herein, because the jury commissioners appointed to select the list of petit jurors from which the present panel were drawn selected no persons of color or of African descent, known as "negroes," so that they might be drawn on said panel, but that said jury commissioners excluded from the list of persons selected to serve as petit jurors for this term of this court all persons of color or of African descent, known as "negroes," because of their race and color; and that said panel, as well as the list of jurors, selected for the entire term of this court, is composed exclusively of persons of the white race, while all persons of the colored race, or persons of African descent, known as "negroes," although constituting about one-fourth of the population, and of the registered voters in said city and county, and although otherwise qualified to serve as jurors, were excluded therefrom, on the ground of their race

and color, and that they have been so excluded from serving on any jury in this court for a great many years, which is a discrimination against the defendant, since he is a person of color and of African descent, known as a "negro;" and that such discrimination is a denial to him of the equal protection of the laws, and of his civil rights guarantied by the Constitution and laws of the United States. All of which the defendant is ready to verify. [Signed]   Seth Carter.   Sworn to and subscribed before me this 13th day of January, 1898.   Florence T. Atkins, Notary Public in and for Galveston County.' After reading the said motion, the defendant asked leave of the court to introduce witnesses, and offered to introduce witnesses, to prove and sustain the allegations therein made; but the court refused to hear any evidence in support of the said motion, and thereupon overruled the same, without investigating the truth or falsity of the allegations of the said motion,—to which action of the court the defendant then and there excepted, and tenders this, his second bill of exceptions," etc.

We will first discuss the questions involved in the impanelment of the grand jury. It is contended that the motion to quash the indictment on this account comes too late; that it should have been presented in a motion to challenge the array. As treated in the original opinion, we there intimated that this challenge should have been to the array, and not by motion to quash. However, our statute points out the grounds of the motion to challenge the array, and it does not include the grounds here urged. The fourteenth amendment to the Federal Constitution, and statutes passed thereunder, would seem to make race discrimination in the organization of a grand jury a ground of challenge to the array, and, where practicable, we believe the question should be raised by a motion to challenge the array of jurors. But in this particular case no opportunity was afforded appellant to challenge the array, because the grand jury which returned the bill against him had been impaneled prior to the commission of this offense. He did, after his arrest under the indictment and before his arraignment, move to quash the indictment on the ground that in the organization of the grand jury colored persons were discriminated against, in that none were selected by the jury commissioners. This was his first opportunity to test this question, and was proper practice, and timely, under the decisions of the Supreme Court of the United States. Neal v. Delaware, 103 U. S., 370; United States v. Gale, 109 U. S., 63, 3 Sup. Ct., 1. We think, under our statute, this question should have been raised in a motion to set aside the indictment or in the form of a special plea. True, this is not one of the causes stated in our Code of Criminal Procedure (articles 559, 561). It will be seen that the enumeration of causes by the Code is not exclusive of other fundamental constitutional grounds. We quote from Williams v. State, 20 Texas Criminal Appeals, 359, as follows: "There are two other pleas not specially mentioned or authorized in the Code, which are constitutional and inherent, to wit, jeopardy and want of jurisdiction, and a special issue as to these may also be raised by a special plea, independently of any provisions

of the statute." This special plea is required to be verified by the affidavit of the defendant. Code Crim. Proc., art. 562. And so we take it that a fundamental question arising under the Constitution of the United States can be made by special plea outside of our statute.

We do not understand appellant to make the contention that the laws of this State as to the impanelment of juries discriminate between the races, or in any manner violate the provisions of the fourteenth amendment to the Constitution of the United States, or the laws of Congress enacted thereunder. The fact is that our laws have made no such distinction since said fourteenth amendment became the law of the land. It is not necessary here to go into the details of our statute on the subject of the selection, organization, and impanelment of grand and petit juries; but a reference thereto will clearly show that the law is in perfect harmony with the Federal Constitution on this subject, excluding every idea of discrimination, and such has been the uniform holding by the courts of last resort in this State.

Appellant insists, while the law is all right, that in its administration there was discrimination in the selection by the jury commissioners of the grand jurors who found this bill of indictment. If this be true, it is a ground for invoking the revisory powers of this court; and, if we erroneously hold that there was no discrimination, it would afford the basis for a writ of error to the Supreme Court of the United States. Neal v. Delaware, 103 U. S., 370; Gibson v. Mississippi, 162 U. S., 565, 16 Sup. Ct., 904; Williams v. Same, 170 U. S., 213, 18 Sup. Ct., 583. In the cases cited, especially in the case of Neal v. Delaware, the subject of race prejudice in regard to the impanelment of juries is thoroughly discussed pro and con; a majority of the court holding that if in the administration of the law, fair on its face and presenting no discrimination between the races, it was so administered in the impanelment of the grand jury as to entirely ignore and discriminate against colored citizens qualified to sit on the grand jury, it would be violative of that provision of the fourteenth amendment to the Constitution of the United States guarantying the equal protection of the laws to all citizens. We quote from that case as follows: "We repeat what was said in Virginia v. Rives, 100 U. S., 322, 'that while a colored person, put to a trial involving his life, liberty, or property, can not claim as a matter of right that his race shall have a representation on the jury, and while a mixed jury in a particular case is not, within the meaning of the Constitution, always or absolutely necessary to the equal protection of the laws, it is a right to which he is entitled that, in the selection of juries to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them because of their color.'" Chief Justice Waite and Justice Field dissented from the view entertained by a majority of the court, and the latter expressed his views in a strong dissenting opinion, taking the ground that, if the grand jury was composed of legally qualified citizens under the law, the defendant would have no right to complain because some other legally qualified citizens were equally en-

titled to be impaneled; that it was the deprivation of a right of which said excluded citizens could alone complain. Whatever may be our views upon this question, so far as we are concerned, it being a Federal question, it is res adjudicata, and the decisions of the Supreme Court of the United States are the law on the subject. However, we would remark that, in the cases which have come under our observation, it was a controversy between the races; that is, a colored man was on trial for an injury to a person of the white race. If the injured parties in said cases were white persons, and the defendants colored persons, we can understand the application of the Federal decisions; but if both were colored persons (as in this case) we fail to appreciate how race prejudice could have entered into the administration of the law in finding a bill of indictment by an exclusively white grand jury, unless it be assumed that race prejudice, on the part of the whites against the blacks, is so bitter and acute as that the law would not be fairly and impartially administered where the right of colored persons for injuring colored persons are alone in issue. Our courts have invariably recognized race prejudice where the controversy or issue on trial involved both white and black persons. As illustrative of this, where a negro is on trial for the homicide of a white man, it is permissible to test the juror as to his race prejudice, and, if he answer that he can not give the defendant as fair a trial as if the charge was against a white man for killing a white man, it affords a ground for challenge. Lester v. State, 2 Texas Crim. App., 432; Cavitt v. State, 15 Texas Crim. App., 190. Perhaps the same objection would hold good in the impanelment of a grand jury.

As stated above, where the issue to be tried is exclusively between persons of the black race, we fail to perceive how race prejudice could operate on or actuate a white jury in finding a bill of indictment. The decisions of the Federal court referred to make no distinction of the character suggested, but are broad enough to cover every case where a negro is indicted by a grand jury, if it appears that in the selection of such grand jury the negro race has been discriminated against. We will therefore consider that the decisions of the Supreme Court of the United States construing the fourteenth amendment and the Federal enactments thereunder, include the character of case here presented; that is, an indictment of one negro for killing another negro. The bill of exceptions challenges the attention of this court, and involves the question whether or not the court below erred in refusing to quash the indictment, in the shape the question was presented to it by the bill of exceptions.

It will be noted that the motion to quash was based simply on the affidavit of appellant. There were no accompanying affidavits setting out the facts, nor was there any agreement as in Neal's Case, supra, not requiring a separate affidavit of the appellant in support of the motion; that is, the question was presented to the court without any evidence whatever in support of it. The general rule is that a motion to quash reaches only matters on the face of the record. In this case the motion to quash was not predicated on the record, but involved extraneous mat-

ters, and before the court would be authorized to act there must be some proof of the allegations contained in the motion. The motion was but a mere tender of the issue, unaccompanied by any supporting testimony. We think, as presented, it was not sufficient to come within the rule laid down in Smith v. Mississippi, 162 U. S., 592, 16 Sup. Ct., 900. But it is said that here appellant offered to prove the allegations of his motion, and the court refused to permit him. The language used in the Smith Case, supra, in the motion, also contains a proffer to prove the allegations of the motion by the officers selecting the jury, and prayed for subpoenas for said officers. But the court, in deciding the question, ignored this offer, presumably on the ground of its insufficiency as being too vague, and because the testimony of no witness was offered in support of the motion. The proposition contained in the motion here is still more vague and general. It names no witness or person by whom it was proposed to prove the allegations of the motion. Under the practice in our courts, and we believe under the practice of all courts, a bare proposition to prove certain facts, without tendering the witness or witnesses, or stating by whom it was proposed to prove them, would not be sufficient to invoke the action of the court. And the bare recitation that the court refused to hear evidence in support of said motion is without meaning, because in fact no testimony was tendered by appellant. Possibly appellant framed his offer to prove the allegations of his motion in general terms (without naming any witnesses by whom the facts could be proved) for the reason that he had no witness to support such allegations. That the propositions contained in his motion are difficult of proof is conceded by the Supreme Court. Gibson v. Mississippi, 162 U. S., 565, 584, 16 Sup. Ct., 904. But this, instead of relieving him of the necessity of pointing out his means of proof, it occurs to us would require a greater strictness in naming the witnesses by whom the allegations could be established. At any rate, the bill of exceptions on this subject, should be so framed as to include all matters sufficient to overcome the presumption of the correctness of the ruling complained of. We hold, therefore, that the court did not err in refusing to quash or set aside the indictment.

As to the motion to quash the special venire, a reference to the bill of exceptions shows that this motion was not presented to the court until after the jury had been selected, duly accepted by both parties, impaneled, and sworn according to law to try said case. This motion came too late. United States v. Gale, 109 U. S., 65, 3 Sup. Ct., 1. He had an opportunity to move to quash the panel on the grounds alleged, supporting his motion by accompanying affidavits, or tender named witnesses, when the list was brought in and before a single juror had been impaneled and sworn. But he did not avail himself of this; and it occurs to us that after engaging in the selection of a jury, passing on their qualifications, and accepting twelve qualified jurors as fair and impartial to try his case, it was then too late, under all the rules of practice announced by the courts, to move to quash the original panel or list of jurors summoned

from whom the twelve jurors had been selected. We do not deem it necessary to do more than state the case as presented in the bill of exceptions. See 12 Am. and Eng. Enc. of Law, pp. 424, 425, and notes for collated authorities.

We hold that the court below did not err in overruling said motions. The motion for rehearing is accordingly overruled.

*Motion overruled.*