## Robert Smith v. The State.

### No. 2810.   Decided December 2, 1903.

**1.—Jury and Jury Law—Fourteenth Amendment.**

The law does not require that negroes shall be drawn to serve, but it requires that in the selection of grand and petit juries the negro race be not discriminated against where a negro is to be indicted or tried, and the jury commissioners should exercise care in the selection of the jury so that their action would indicate their purpose not to avoid the requirements of the law.

**2.—Same—Jury Commissioners.**

It is no answer to this proposition to say that in order to meet the require-ment of the Fourteenth Amendment of the Constitution of the United States and the decisions thereunder that the jury commissioners discussed this ques-tion and decided to place one negro on the grand jury in a county wherein the colored population is large enough to have entitled it to a greater representa-tion on both the grand and petit juries, unless it is made evident that the jury commissioners exercised such care as would indicate their purpose not to dis-criminate against the negroes.

**3.—Same—Challenge to the Array.**

It was the duty of the trial judge when this matter was brought to his attention to have informed himself, and whether the grand jurors were then being impaneled or about to retire, to have recalled them and afforded appel-lant an opportunity to raise this question.

**4.—Change of Venue.**

See opinion for facts showing such prejudice on account of the race ques-tion and combination of influential persons against the accused as to have necessitated a change of venue to secure a fair and impartial trial.

**5.—Evidence—Footprints.**

See opinion for facts as to character of tracks on the ground where the homicide was committed on the morning thereafter as insufficient to qualify the witness testifying thereto, to authorize him to give an opinion as to the similarity of said tracks with those made by the defendant.

**6.—Accomplice.**

The court should charge on the law of accomplice, if the evidence in a future trial should be the same as is presented by this record.

Appeal from the District Court of Grayson.   Tried below before Hon. Rice Maxey.

Appeal from a conviction of murder in the first degree; penalty, death.

There was testimony that a State's witness who appeared as one of the principal witnesses for the State came to the office of the Sun Life Insurance Company on the day the dead body of the deceased was found and inquired about insurance on his own life, and if his life insurance would be paid if he was hanged or mobbed. He also stated at another time and place that he had helped deceased make some of the payments on her life insurance.   He also inquired at the insurance office about the insur-ance on the life of the deceased.   He was also seen standing, on the morn-ing following the homicide, on the corner of the street near the postoffice, a little over half a block from the place where the body of the deceased was found, but did not go there with the crowd, but afterwards saw the body at the undertaking establishment.   That this witness had been an associate of the dead woman, who was a prostitute, and that he had been intimate with her.   This witness denied that he had paid any part of the

premiums on deceased's life policy or that he had made any inquiries with reference thereto, or had made the statement about the mob or being hanged, but admitted his intimacy with the deceased. He also testified that the last time he had seen deceased was on the night before the morning her dead body was found; she had told him that evening that she was going to Denison, but changed her mind when she got to the depot, and that he turned her over to the defendant and gave her 50 cents and told the defendant to take her to the hotel, where she could get lodging, and the deceased and the defendant started off together in the direction of the postoffice. This witness was contradicted in many of his material statements as to what he had sworn to on a former trial by the defendant. The defendant requested a charge on accomplice on this testimony, which the court refused. The remainder of the testimony is very voluminous, but that applicable to the issues involved is sufficiently stated in the opinion.

Defendant's counsel also presented motion for change of venue, which the court overruled, defendant assigning error. Also filed motion for continuance, which was overruled, and court's action assigned as error. Defendant's counsel also requested various special charges which the court refused, and prepared bills of exception to every adverse ruling of the court, and made an able and fearless defense which is complimented in the opinion of the court.

*George Peter Brown* and *Sidney Wilson,* for appellant.—Defendant's counsel filed his motion to quash the indictment, because of discrimination against the negro race and against defendant and assigned error of court's action overruling said motion, citing 14th Amendment to the Constitution of U. S.; 48 S. W. Rep., 508; Neal v. Delaware, 103 U. S., 574; 26 Supreme Court Rep., 370; Smith v. State, 58 S. W. Rep., 97; Ripper v. State, 62 S. W. Rep., 422; Whitney v. State, 59 S. W. Rep., 895.

*Howard Martin,* Assistant Attorney-General, for the State.—In answer to appellant's first assignment of error, the State submits that it was an issue of fact as to whether or not negroes were intentionally excluded from the grand jury which found the indictment against appellant; that the burden of proof was upon appellant to establish the fact that negroes were intentionally excluded from the grand jury which presented the indictment. If the evidence on this issue is conflicting, this court should not disturb the finding of the trial court. The trial judge's finding on this issue, if there is evidence to support it, is as binding upon this court as any other finding of the court upon any other question of fact. There is sufficient evidence to support the finding of the court upon this issue.

The court did not err in refusing to change the venue. Harrison v. State, 43 S. W. Rep., 1002; Renfro v. State, 56 S. W. Rep., 1013; Lacy v. State, 30 Texas Crim App., 119; Johnson v. State, 26 Texas Crim.

App., 399; Grisham v. State, 8 Texas Crim. App., 38. Also see the following cases, which discuss this question at length: Randle v. State, 34 Texas Crim. Rep., 43; Meyers v. State, 46 S. W. Rep., 817; Gallaher v. State, 50 S. W. Rep., 817.

There was no error in refusing appellant's third special charge, for the reason there was no evidence which tended to show that Joe Netherly was an accomplice; but if there is, appellant admitted every material fact Netherly testified to, which tended to connect appellant with the homicide. Therefore, if there is evidence tending to show that he was an accomplice, this is not reversible error. The testimony of J. M. Chancellor relative to tracks was admissible. McClain v. State, 30 Texas Crim. App., 482; Squires v. State, 34 S. W. Rep., 707.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death.

This case has been before this court twice before, and on both occasions it was reversed, because in the formation and impanelment of the grand jury which found the indictments against appellant (a negro), he was discriminated against on the part of the court. Smith v. State, 42 Texas Crim. Rep., 220; Smith v. State, 44 Texas Crim. Rep., 90; Id., 5 Texas Ct. Rep., 434. Since the last reversal, a new grand jury was impaneled, and appellant reindicted. He made a motion to quash the indictment on the same ground as heretofore, to wit: "That appellant was a negro, and was charged with the murder of Aria Taylor, a white woman; that no negroes were placed on the grand jury which indicted him, and that there are from 2000 to 3000 negroes, resident citizens of Grayson County, who are qualified jurors, and who were qualified to sit as grand jurors—being about one-fourth of the jury population of said county; that the jury commissioners appointed by the court were all white men; that, in selecting the grand jury, they drew no negroes on said grand jury, and, in this connection, they discriminated against him in the formation of said grand jury, and thus denied him the equal protection of the law, which is guaranteed him under the Fourteenth Amendment to the Constitution of the United States, and the decisions thereunder."

After hearing the evidence, the court overruled said motion to quash, and appellant reserved his bill of exceptions. We have carefully examined the record testimony contained in this bill of exceptions, and discover no material change from the conditions attending the impanelment of the two former grand juries, except here it is apparent that there was an endeavor, as was stated by the assistant county attorney of Grayson County in his argument, to avoid the effect of the decisions of the Supreme Court of the United States and of this court. In the former trials no person of African descent was drawn on the grand jury, but, in the present instance, it appears the commissioners managed to draw one person of African descent. On investigation, however, it was shown that he was either dead or had left the county a number of years before this

offense was committed. While the commissioners in their testimony attribute this mistake to an accident, still it does not occur to us that it relieves the situation, even if they had drawn a negro juror who was a citizen of the county, and who was still alive. Of itself it would not show a lack of discrimination against the negro race. They testify that their purpose was to give the negroes representation on both the grand and petit juries; and that they decided to put one negro on each list.

We do not understand that the law requires that negroes shall be drawn or serve on juries, but the law does require that, in the selection of grand and petit juries, the negro race be not discriminated against where a negro is to be indicted or tried. It is no answer to this proposition to say that, in order to meet the decisions of the Supreme Court of the United States, they discussed the question and decided to place one negro on the grand jury, in order that the negro race be represented. An effort to comply with the Fourteenth Amendment, and the decision thereunder, instead of endeavoring to avoid the same, in a colored population shown to exist in Grayson County, might have entitled the negro race to a greater representaition on both the grand and petit juries than is here shown. And, when we take in connection with this fact that the commissioners drew or selected a dead negro to serve on the grand jury, makes it evident that they did not exercise that care in the selection of as important a body as the grand jury that would indicate their purpose was not to discriminate against the negroes.

In this connection we refer to the testimony of Judge Bryant, the Federal judge of that district, who states that he has negroes from Grayson County, both on the grand and petit juries, serving during his court, showing that there must be persons of African descent who can be found and who are considered capable of performing duties devolving on grand juries.

While we fully understand the sentiment that may have actuated the officers of the court below, and appreciate their disinclination to place the administration of the law, even in part, in the hands of a people assumed to be inferior to the white race, yet under the law and before the law, all are equals, and, in its administration, no favors can be shown, nor can either the letter or spirit of the law be ignored. It is said, however, that appellant should have exercised his right of challenge to the array, and, having failed to do so, he can not now complain, although his race may have been discriminated against in the selection of a grand jury. In reply to this, we would observe that there is some evidence that appellant made an effort to get into communication with the court in regard to the impanelment of the grand jury, and wrote a note and gave it to one of the attendants at the jail, but it does not appear to have reached any officer of the court or the grand jury. Moreover, his lawyer, Mr. Cox, who had previously managed the case on appointment, but was on the eve of retiring from the defense of appellant, brought this matter to the attention of the court about the time the grand jury were

impaneled, or as they were going to their room after impanelment, and requested that, if it was intended to reindict Bob Smith, that he wanted an opportunity to challenge the array. The judge informed him that he knew nothing about it.

It does occur to us, under the circumstances of this case, that it was the duty of the judge, when this matter was brought to his attention, to have informed himself, through the county attorney, as to the purpose of reindicting appellant; and, whether the grand jurors were then being impaneled, or about retiring, it would have been an easy matter to have recalled them, and thus have afforded appellant an opportunity to raise the question at that stage of the procedure. This was not done.

In reversing this case, we can not forbear mentioning the fact that certain members of the bar of Grayson County, under appointment of the court, and without compensation, have represented appellant both in the various trials in the lower court and this court. Their services have not been of a perfunctory character; on the contrary, they have manifested both courage and ability. Appreciating fully the genius and spirit of our free institutions, they have left no stone unturned in order to afford defendant every defense guaranteed to him under the law. And it may not be improper here to observe that no State has a better system of procedure safeguarding every right of a defendant charged with a criminal offense than has our own commonwealth. If a person is charged with a capital felony, and is too poor to employ counsel, our statute provides for the appointment of counsel, who are required to serve without fee or reward. Throughout the trial, the presumption of innocence follows him as a shield for his protection, and every reasonable doubt is resolved in his favor; and better still, and in this respect vastly superior to the Federal procedure, no judge during the trial or in his charge dare intimate his opinion as to defendant's guilt. While high overhead and pervading all is that provision of our Bill of Rights, which guarantees to a defendant a trial by a fair and an impartial jury; and, in keeping with this provision, every law in our statutes on this subject is in consonance with this constitutional guaranty. We do not hestitate to assert that, under our system of procedure, a defendant on trial for a criminal offense is not only vouchsafed a fair trial, but a liberal trial with every intendment in his favor; and that, no matter what his race or color, he is afforded the equal protection of the laws, which, in our opinion, is best preserved to him by lodging the administration thereof in the hands of the most cultured and intelligent of our citizenship, without regard to other qualifications.

However, the Supreme Court of the United States, in construing the Fourteenth Amendment to the Constitution, have added what they deem another guaranty of fair trial by jury where the rights of a member of the negro race is involved. Carter v. State, 39 Texas Crim. Rep., 345, and authorities there cited.

We are bound to recognize the fact that the Federal Constitution and

the laws of Congress enacted thereunder are the supreme law, so far as we are concerned. Although we may differ with that learned tribunal in the construction of said amendment, still their interpretation thereof is the paramount law, and it is our duty to follow it, and administer it fairly and impartially.

Reviewing the entire record, we believe it is manifest that, under Federal decisions on this subject, the Supreme Court of the United States would not hesitate in holding that, in the impanelment of the grand jury which found this bill of indictment, appellant was discriminated against on account of his race and color; and, so believing, we are constrained to reverse and remand the case, with instructions to the lower court in the impanelment of a new grand jury to reindict appellant, to afford him the fullest latitude in the exercise of his rights in selecting a grand jury. By pursuing this course, future expense and delay will be avoided, while at the same time, every right appellant is entitled to under the law will be guaranteed.

We would further observe in regard to the change of venue that the record before us, while it shows perhaps on the part of every witness testifying that, in his opinion, appellant could get a fair and impartial jury in Grayson County, yet it is apparent, even in the minds of a majority of these witnesses, there is some question about it, that it would require an effort to secure such jury. This has been brought about by various causes, chiefly on account of the race question, and the notoriety of this homicide, occasioned by frequent trials and in which this race question has been projected to such an extent as to incite prejudice against this appellant. As evidence of this feeling, on one occasion when a mob had failed to secure another victim for whom they were seeking, there was strong talk amongst them of going to the jail at Sherman and lynching Bob Smith. We believe, under the facts of this case, if the question should be presented again in this shape, after indictment found, it would be the duty of the court to change the venue, in order that there be no question as to the fairness and impartiality of a trial.

During the trial, appellant reserved a bill of exceptions to the action of the court permitting a witness to testify as to the appearance of certain tracks found by him on the ground where the homicide was committed on the next morning; and that in the opinion of said witness, they were similar to appellant's tracks and those of deceased. The objection here urged is that the witness was not sufficiently definite as to the character of the tracks to authorize him to give an opinion as to the similarity thereof; but stated, in substance, that the tracks he saw on the ground, which he took to be defendant's, were of a number 8 or 9 shoe; that the impression of the heel of the right foot as it appeared on the ground was that it was made by a shoe worn off on one side of the heel, and that the shoes which he saw worn by appellant on that morning appeared to be a number 8 or 9, and that the heel on his right shoe was

worn off on one side; that the shoes also appeared to be broad across the ball, tapering toward the toe; that the impressions on the ground appeared to have been made by a shoe broad across the ball, narrowing towards the toe. That he did not take measurements of the impressions on the ground or of the shoes. In this connection, it may be observed that other witnesses examined the locality and stated that the ground was very hard there, and no tracks were apparent, and that a short time after the body was discovered a great number of people were there, and if there had been tracks they would have been obliterated. However, looking to the witnesses' testimony alone, we do not believe that the facts detailed by him were sufficiently definite to authorize him to give an opinion as to the similarity of the impressions on the ground with those of the shoes worn by defendant. He was not even certain as to the number of the shoe worn by appellant, stating it was an eight or nine, and the only peculiarity suggested by him is as to the heel of the shoe and the impression of the heel on the ground. It occurs to us that before a witness is authorized to give an opinion upon so vital a question as the similarity of tracks, as a circumstance tending to connect appellant with the offense charged, his testimony should be more certain than is manifested here. Grant v. State, 42 Texas Crim. Rep., 275, 4 Texas Ct. Rep., 274; 58 S. W. Rep., 1025; Gill v. State, 36 Texas Crim. Rep., 594. Appellant also complains because the court failed and refused to give a charge on accomplice testimony as to the witness Netherly. Without reciting the testimony here, we believe that if the evidence in a future trial should be the same as is presented by this record, it would be the duty of the court to give a charge on accomplice testimony as to this witness. There are other questions suggested, but they are such as are not likely to occur on another trial of the case, and we pretermit any discussion thereof.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.