## J. D. JOHNSON v. THE STATE.

No. 20032. Delivered February 15, 1939.

The opinion states the case.

*E. H. Griffin,* of Graham, and *Jno. Abney,* of Hillsboro, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for rape by force, punishment assessed at death.

Prosecutrix, the victim of the assault, was a white woman fifty-seven years old, a widow who lived alone on a small farm which she cultivated herself with some help from a married son who lived on another farm nearby. Appellant was a negro youth seventeen and a half years old. He lived on an adjoining farm to that occupied by prosecutrix. He was well-known to her, having formerly done some work on her farm for a negro tenant or employe of prosecutrix. According to her testimony appellant assaulted and had carnal knowledge of her by force and against her will just before dark on the afternoon of April 9, 1938. The scene of the assault was near the barnyard or lot on the premises of prosecutrix, she having gone to the barn to feed her stock, the attack occurring as she was returning to the house.

One of the serious complaints of appellant arises from the failure of the court to charge upon the subject of alibi. Appellant denied having committed the assault and the only affirmative defense—if it may be so designated—was that he was at another place when the assault was committed upon prosecutrix. In view of the evidence upon that issue the time of day at which the assault occurred becomes material. Prosecutrix testified that she first saw appellant near her place "a while before sunset"; that she took no lantern with her to the barn because "it was not dark enough" to make it necessary; that the assault took place between "sunset and dark; I don't know what time except it was between sunset and dark." She said it was still light enough for her to know and recognize appellant as her assailant. Appellant testified that he had been to town on the day of the offense and had gotten some groceries for his mother and took them to her house and remained there until "pretty close to sunset" at which time he left going to Mr. Ben Enders' which was about a mile from his mother's home; that the sun was going down when he reached the Enders home; that he helped Mr. Enders take some side-boards off a trailer and that he and Mr. Enders made an unsuccessful effort to milk a wild cow; that he was at the Enders place for about half an hour or an hour; that when he left Enders' to return home he went the usual route which took him by and near the premises and barn of prosecutrix and that it was "pretty dark" when he passed there. He went home and went to bed where he was found by the officers later in the night.

Robert Enders testified that appellant came to the house of the witness' father at six o'clock and remained there until seven-thirty during which time appellant had not been out of witness' sight. He fixed the time positively by radio programs to which he was listening. *Immediately* after appellant left witness went to the lot and milked the cow which his father and appellant had tried to milk earlier. The witness testified that it was *dark* when he did such milking.

We have set out the foregoing testimony in order that it may appear that the issue was directly raised whether appellant was at Enders' place at the time it was claimed the assault was committed.

Appellant pertinently called attention to the omission of an instruction on alibi by the following written exception to the court's charge. "Said charge wholly fails to instruct the jury upon this defendant's affirmative defense raised by the evidence in this case to the effect that he was at another and different place at the time that the assault, if any, was made upon the prosecuting witness at her barn. Defendant is entitled to have this defense affirmatively presented to the jury and to have their attention directly called to it."

Appellant did not rest upon such exception but went further and presented a special requested charge supplying the omission to which the exception was addressed.

It is too well established to require discussion that appellant is entitled to fair submission of any affirmative defense raised by the evidence. As it relates to an alibi Mr. Branch in his Ann. Tex. P. C., Sec. 55 states the principle very tersely as follows: "If the testimony raises the issue of alibi, it is error to fail to charge on alibi where the charge of the court is excepted to at the time for such omission."

"If there is testimony raising the issue, it is error to refuse to give a requested charge on alibi."

Many cases are cited supporting the text. In addition we note the following. Harris v. State, 119 Tex. Cr. R. 71, 44 S. W. (2d) 708; Burk v. State, 117 Tex. Cr. R. 144, 33 S. W. (2d) 462; Colston v. State, 106 Tex. Cr. R. 423, 292 S. W. 881; Freeman v. State, 91 Tex. Cr. R. 410, 239 S. W. 969; James v. State, 86 Tex. Cr. R. 107, 215 S. W. 459; Hill v. State, 103 Tex. Cr. R. 580, 281 S. W. 1071.

Appellant sought to have the indictment quashed on the ground that there was discrimination against him—he being of the negro race—in that he says citizens of his race and color were excluded from the grand jury which returned the

indictment, and that said discrimination was in violation of the 14th Amendment to the Constitution of the United States which guarantees him equal protection of the law, and was a denial to him of due process of law. It is not necessary to set out the motion in full. It was sufficient to raise the issue of discrimination. In bill of exception number six, which brings forward complaint of the overruling of said motion to quash the indictment there is set out the said motion after which appears the following recitals.

"The State did not file any counter affidavits nor controverting plea nor denial of any kind, nor offer any witness to contradict the statements in the motion.

"The court thereupon proceeded to hear said motion and the defendant called a number of witnesses and tendered their testimony and certain documentary evidence in support of said motion.

"Thereupon it was agreed between the defendant and the attorneys representing the State, with the consent and approval of the court that the following were the true facts in support of said motion and should be included in the record in lieu of the testimony and documents offered by the defendant:

"The said grand jury that returned said indictment was empaneled on March 7, 1938, and this offense was not charged to have been committed until April 9th, 1938, long after said grand jury had been empanneled, selected and sworn, and this defendant had no opportunity to challenge the array of the grand jury; that the defendant is a black man, of African descent, belonging to the Negro race, and that the population of this judicial district and of Hill County is composed of over thirteen per cent Negroes and has been composed of about that percentage for about thirty years. That the United States Census of 1930 showed a total population of 43,036 persons in Hill County, Texas, of which 5,193 (being 13.7 per cent) were negroes, and that for a period of thirty years no Negroes have ever served on any grand or petit jury in this County or District Court, and that during a period of at least twenty years next preceding this trial there have convened each year as many as six different grand juries in this court, none of whom were Negroes or of African descent or belonged to the colored race, and that during the ten years next preceding said twenty years several grand juries each year convened in this Court, and that no person belonging to that race or of African descent has been appointed or selected as a grand juror within the period of thirty years next preceding the trial of this case;

though during said entire thirty years, a number of persons belonging to the Negro race, of African descent, in this County and District and Court have been qualified voters and jurors, and qualified to serve upon grand juries."

The crux of the whole matter is found in the closing lines of the agreed statement to the effect that for thirty years no person of the negro race had been "selected" as a grand juror, during which time a number of persons belonging to said race lived in the county *who were qualified voters and qualified to serve upon grand juries.* What concerns us is the effect of the agreed conclusions resulting from the evidence introduced by appellant in support of his motion to quash. By the recitals in said bill appellant appears to have brought himself squarely within the rule announced by Chief Justice HUGHES of the Supreme Court of the United States in Norris v. State of Alabama, 294 U. S. 578-599, 79 L. Ed. 1074. The evidence in that case showed that for "a long number of years" no negro had been selected for jury service, witnesses saying none had ever been so called within their memory, the ages of such witnesses ranging from fifty to seventy-six years. Justice Hughes said: "That testimony in itself made out a *prima facie* case of the denial of the equal protection which the Constitution guarantees." The recitals in the bill make out a prima facie case under the quoted statement from the opinion in the Norris case (supra). If the State had any evidence which would have defeated or challenged the prima facie showing from the recitals in the bill it is not reflected from the record; on the contrary, it is certified that the State offered no witness to "contradict the statements in the motion." Decided at the same time as the Norris case (supra) was Patterson v. State of Alabama on the same facts, 294 U. S. 600, 79 L. Ed. 1082. The facts in the present case are quite similar to those in Hale v. Comm. of Ky., 303 U. S. 613, 58 Sup. Ct. Rep. 753, in which the Supreme Court also sustained a complaint of discrimination. See also Neal v. State of Delaware, 103 U. S. 370, 26 L. Ed. 567; Hollins v. State of Oklahoma, 295 U. S. 394, 79 L. Ed. 1500; Carter v. State, of Texas, 46 S. W. 236, 48 S. W. 508, 39 Tex. Cr. R. 348, 177 U. S. 442, 44 L. Ed. 839. As said by Judge Davidson in Carter's case (supra). "Whatever may be our views upon this question, so far as we are concerned, it being a federal question, it is res adjudicata, and the decisions of the Supreme Court of the United States are the law on the subject." (39 Texas Crim. Rep., 345, 48 S. W. 510). The motion of appellant to quash the indictment raised a federal question and we are

foreclosed by the agreed facts certified in the bill of exception. If we should hold that said bill does not reflect error, there is no doubt but that the Supreme Court of the United States would strike down the indictment under the authority of the recent cases of Norris, Patterson and Hale (supra). We quote from the opinion in Smith v. State, 45 Tex. Cr. R. 405, 77 S. W. 453, in which the question now before us was considered. "We do not hesitate to assert that under our system of procedure a defendant on trial for a criminal offense is not only vouchsafed a fair trial, but a liberal trial, with every intendment in his favor; and that, no matter what his race or color, he is afforded the equal protection of the laws, which, in our opinion, is best preserved to him by lodging the administration thereof in the hands of the most cultured and intelligent of our citizenship, without regard to other qualifications. However, the Supreme Court of the United States, in construing the fourteenth amendment to the Constitution, have added what they deem another guaranty of fair trial by jury where the rights of a member of the negro race in involved. Carter v. State, 39 Tex. Cr. R. 345, 46 S. W. 236, 48 S. W. 508, and authorities there cited. We are bound to recognize the fact that the federal Constitution and the laws of Congress enacted thereunder are the supreme law, so far as we are concerned. Although we may differ with that learned tribunal in the construction of said amendment, still their interpretation thereof is the paramount law, and it is our duty to follow it, and administer it fairly and impartially."

Appellant raises the same question of discrimination regarding the venire of one hundred men from whom a jury was to be selected. We pretermit discussion of the bill bringing such complaint forward. What has been said about the selection of the grand jury applies also to the venire.

Under the record we perceive no other course to pursue than to reverse the judgment and order prosecution dismissed under the present indictment.