JEFF ROBERTS, ALIAS DICKEY, v. THE STATE.

No. 4441. Decided May 2, 1917.

**1.—Murder—Race Discrimination—Challenge to Array.**

The contention of the State that, inasmuch as the defendant did not object to the array of the grand jurors, he is, therefore, too late in presenting that question after the return of the indictment, is not well taken. Following Carter v. Texas, 177 U. S., 442.

**2.—Same—Intentional Race Discrimination—Selection of Jurors—Negro Race.**

If the facts would show, upon trial of murder, defendant being a negro, that there was an intentional discrimination against the negro race in the selection of jurors, where there were competent negro jurors, it might raise a serious question, but unless this is shown this court would not feel justified under the ruling of the Supreme Court of the United States to grant a reversal, and there being no such showing there was no reversible error.

**3.—Same—Rule Stated.**

The equal protection of the laws is not denied to colored persons by a State Constitution and laws, which make no discrimination against the colored race

in terms, but which grant a discretion to certain officers, which can be used to the abridgment of the right of colored persons to vote and serve on juries, when it is not shown that their actual administration is evil, but only that evil is possible under them. Following Williams v. Mississippi, 170 U. S., 213.

#### 4.—Same—Case Stated—Rule Stated.

The laws of Texas, both constitutional and statutory, do not discriminate against the negro, but places a qualification of all jurors on the same basis without any reference to color, or previous condition; and in order to bring this matter within the rule of discrimination, the facts must show that such race discrimination occurred in that particular locality, and was brought about by officers charged with the duty of selecting jurors, and this not being shown, there was no reversible error.

Appeal from the District Court of Denton. Tried below before the Hon. C. F. Spencer.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Clark Owsley,* for appellant.—On question of race discrimination: Carter v. Texas, 177 U. S., 442; Whitney v. State, 42 Texas Crim. Rep., 283, 59 S. W. Rep., 895; Montgomery v. State, 45 S. W. Rep., 882.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of challenge to array: McLeine v. State, 64 Texas Crim. Rep., 19; Hemphill v. State, 75 Texas Crim. Rep., 63, 170 S. W. Rep., 154.

On question of race discrimination: Pollard v. State, 58 Texas Crim. Rep., 299; Carter v. State, 39 id., 345; Welch v. State, 66 Texas Crim. Rep., 525, 147 S. W. Rep., 572.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder and his punishment assessed at thirty years confinement in the penitentiary.

The case is before us without statement of facts and with one bill of exceptions. That bill presents only the question of race discrimination. It is shown by the bill that one negro killed another negro. Race discrimination is alleged by defendant in selecting grand and petit jurors. The bills show that the grand jury and the petit jury were selected from jurors selected by jury commissioners and were composed of white men exclusively. The State contends that inasmuch as the defendant did not object to array of grand jurors, he is, therefore, too late in presenting that question after the return of the indictment. This question was decided adversely to the State in Carter v. Texas, 177 U. S., at page 442. With reference to the discrimination, there were two witnesses who testified; one of these apparently was a negro and the other one was one of the jury commissioners who selected all of the jurors for that term of the court—grand and petit. The negro witness stated, in a general way, facts he thought discriminated against the selection of negro jurors in Denton County. There was no par-

ticular fact upon which he predicated this view except that none had been selected for a number of years. He also indicates in his testimony that he thought a negro might have a better opportunity where some of the jurors were negroes than he would where they were all white jurors. He said also there were quite a number of negro men in the county who were qualified to sit on the jury under the law, but that he knew of none having so served for years. The white witness testified that he was one of the jury commissioners and was furnished with a list of jurors of the county out of which the commissioners were to select jurors for the term of court at which appellant was indicted and tried. That they were instructed by the court to select competent jurors. He further stated that they did this; that they understood their duty under the instructions given by the court; that the list of jurors furnished the commissioners from which to make these selections to serve at the term of court contained a few negroes consisting in proportion of about one to fifty; that he as commissioner did not select any negro on the jury, and did not believe any of them competent; that where he was not informed as to the competency of a juror on the list he did not select him; that he did not know whether these negroes were competent and had no knowledge in regard to the matter, and, therefore, he did not select any of them. His testimony indicates he made this rule general not only as to negroes but to white men, but he also states that he did not make a selection of any negro and did not believe them competent. He also stated in answer to a question that he did not believe where one negro was charged with killing another that the defendant would get a better jury from among white men than from among the negroes; that the white men were more favorable in the trial of negro cases than were negro jurors so far as he knew, or this was his experience. He also stated that he did not discriminate so far as the negro jurors were concerned, and never thought about whether he was discriminating against them or not; that he did not take that matter into consideration, unless it be that he did not believe those negroes on the list to be competent jurors.

If the facts showed that there was an intentional discrimination against the negro race in the selection of jurors, where there were competent negro jurors, it might raise a serious question, and perhaps would require a reversal, but unless this is shown this court would not feel justified, under the ruling of the Supreme Court of the United States, to grant a reversal. That high court has drawn a distinction in their opinions as to when discrimination is intentional and its operation from that viewpoint, and where it may operate as a discrimination, but was with no evil purpose or intent. This rule was fully discussed and laid down in Williams v. Mississippi, 170 U. S., 213. The syllabus of that opinion states fairly its holding in the following language: "The equal protection of the laws is not denied to colored persons by a State Constiution and laws which make no discrimination against the colored race in terms, but which grant a discretion to cer-

tain officers, which can be used to the abridgment of the right of colored persons to vote and serve on juries, when it is not shown that their actual administration is evil, but only that evil is possible under them."

It occurs to us that the utmost the defendant could claim in this case would be that by reason for quite a number of years no negro jurors had been selected, therefore it was a discrimination. But this case seems to indicate that it is brought within the rule laid down by the Supreme Court in Williams v. Mississippi, and the evidence of the jury commissioner is to the effect that there was no discrimination; that the jurors who were on the list from which he selected whom he did not know he did not consider competent jurors. There was no specific examination into the history of those matters prior to this particular drawing of jurors except in a general way, that no negro had been selected on any of the juries for quite a number of years. Our laws, both constitutional and statutory, do not discriminate against the negro. It places the qualification of all jurors on the same basis without any reference to color or previous condition. If there was any discrimination it would not be legal, but it would be the act of the local officers and authorities who make the selection of jurors. In order to bring this matter within the rule of discrimination the facts must show or ought to show that the race discrimination occurred in that particular locality brought about by officers charged with the duty of selecting jurors. In this case that was not shown, as we understand the testimony. That negroes had not sat on juries seems to be a fact, but that they were discriminated against is denied, and they were not selected because they were not thought to be competent. This evidence is of a most general nature; no specific matters are stated. We are of opinion that the point appellant makes, under the authorities and under this record, is not well taken.

The judgment is, therefore, affirmed.

Affirmed.