## ROBERTS v. STATE. (No. 4441.)

(Court of Criminal Appeals of Texas. May 2, 1917.)

1. INDICTMENT AND INFORMATION ⊙⟞137(2)— OBJECTIONS TO GRAND JURY — MOTION TO QUASH.

Although the defendant did not object to the array of grand jurors, he is not too late in presenting that question after the return of the indictment.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 481.]

2. CONSTITUTIONAL LAW ⊙⟞221—EQUAL PROTECTION OF LAWS—RACE DISCRIMINATION.

The equal protection of the laws is not denied to colored persons, where the state Constitution and laws make no discrimination against the colored race in terms, merely because the discretion granted to officers in the selection of grand and petit jurors might in fact be used to the abridgment of the right of colored persons to serve on such juries, when it is not shown that their actual administration is evil, but only that evil is possible under them.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 724.]

3. CRIMINAL LAW ⊙⟞569—SELECTION OF JURY—EVIDENCE—SUFFICIENCY.

Where both defendant and deceased were negroes, evidence held not to show race discrimination, as alleged by the defendant, in selecting grand and petit jurors, in that no negroes were selected; it being claimed by the officials, that there were no competent negroes to be selected.

Appeal from District Court, Denton County; C. F. Spencer, Judge.

Jeff Roberts, alias Dickey, was convicted of murder, and appeals. Affirmed.

Clark Owsley, of Denton, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of murder, and his punishment assessed at 30 years' confinement in the penitentiary.

[1] The case is before us without statement of facts and with one bill of exceptions. That bill presents only the question of race discrimination. It is shown by the bill that one negro killed another negro. Race discrimination is alleged by defendant in selecting grand and petit jurors. The bills show that the grand jury and the petit jury were selected from jurors selected by jury commissioners and were composed of white men exclusively. The state contends that, inasmuch as the defendant did not object to array of grand jurors, he is therefore too late in presenting that question after the return of the indictment. This question was decided adversely to the state in Carter's Case, 177 U. S. at page 442, 20 Sup. Ct. 687, 44 L. Ed. 839.

[2] With reference to the discrimination, there were two witnesses testified; one of these apparently was a negro, and the other one was one of the jury commissioners, who selected all of the jurors for that term of the court—grand and petit. The negro wit-

ness stated, in a general way, facts he thought discriminated against the selection of negro jurors in Denton county. There was no particular fact upon which he predicated this view, except that none had been selected for a number of years. He also indicates in his testimony that he thought a negro might have a better opportunity, where some of the jurors were negroes, than he would where they were all white jurors. He said, also, there were quite a number of negro men in the county who were qualified to sit on the jury under the law, but that he knew of none having so served for years. The white witness testified that he was one of the jury commissioners, and was furnished with a list of jurors of the county out of which the commissioners were to select jurors for the term of court at which appellant was indicted and tried; that they were instructed by the court to select competent jurors. He further stated that they did this; that they understood their duty under the instructions given by the court; that the list of jurors furnished the commissioners from which to make these selections to serve at the term of court contained a few negroes, consisting in proportion of about 1 to 50; that he, as commissioner, did not select any negro on the jury, and did not believe any of them competent; that, where he was not informed as to the competency of a juror on the list, he did not select him; that he did not know whether these negroes were competent, and had no knowledge in regard to the matter, and therefore he did not select any of them. His testimony indicates he made this rule general, not only as to negroes, but as to white men; but he also stated that he did not make a selection of any negro and did not believe them competent. He also stated, in answer to a question, that he did not believe, where one negro was charged with killing another, that the defendant would get a better jury from among white men than from among the negroes; that the white men were more favorable in the trial of negro cases than were negro jurors, so far as he knew, or this was his experience. He also stated that he did not discriminate so far as the negro jurors were concerned, and never thought about whether he was discriminating against them or not; that he did not take that matter into consideration, unless it be that he did not believe those negroes on the list to be competent jurors.

If the facts showed that there was an intentional discrimination against the negro race in the selection of jurors, where there were competent negro jurors, it might raise a serious question, and perhaps would require a reversal; but, unless this is shown, this court would not feel justified, under the ruling of the Supreme Court of the United States, to grant a reversal. That high court has drawn a distinction in their opinions as to when discrimination is intentional, and its operation from that viewpoint, and where it may operate as a discrimination, but was with no evil purpose or intent. This rule was fully discussed and laid down in Williams v. Mississippi, 170 U. S. 214, 18 Sup. Ct. 583, 42 L. Ed. 1012. The syllabus of that opinion states fairly its holding in the following language:

"The equal protection of the laws is not denied to colored persons by a state Constitution and laws which make no discrimination against the colored race in terms, but which grant a discretion to certain officers, which can be used to the abridgment of the right of colored persons to vote and serve on juries, when it is not shown that their actual administration is evil, but only that evil is possible under them."

It occurs to us that the utmost the defendant could claim in this case would be that, by reason for quite a number of years no negro jurors had been selected, therefore it was a discrimination. But this case seems to indicate that it is brought within the rule laid down by the Supreme Court in the Williams Case, and the evidence of the jury commissioner is to the effect that there was no discrimination; that the jurors who were on the list from which he selected, whom he did not know, he did not consider competent jurors. There was no specific examination into the history of those matters prior to this particular drawing of jurors, except, in a general way, that no negro had been selected on any of the juries for quite a number of years. Our laws, both constitutional and statutory, do not discriminate against the negro. It places the qualification of all jurors on the same basis, without any reference to color or previous condition. If there was any discrimination, it would not be legal; but it would be the act of the local officers and authorities, who make the selection of jurors. In order to bring this matter within the rule of discrimination, the facts must show, or ought to show, that the race discrimination occurred in that particular locality, brought about by officers charged with the duty of selecting jurors. In this case that was not shown, as we understand the testimony. That negroes had not sat on juries seems to be a fact, but that they were discriminated against is denied, and they were not selected because they were not thought to be competent.

[3] This evidence is of a most general nature; no specific matters are stated. We are of opinion that the point appellant makes, under the authorities and under this record, is not well taken.

The judgment is therefore affirmed.