## JUAREZ v. STATE. (No. 8959.)

(Court of Criminal Appeals of Texas. Nov. 25, 1925.)

**1. Constitutional law ⬦⟹46(2)—Code held not to provide for raising question of denial of equal protection of law as applied to selection of grand jury either by challenge to the array or by motion to set aside indictment.**

Code Cr. Proc. 1925, arts. 358 and 361, providing grounds for challenging array of jurors, and articles 505, 506, 511, and 512, setting forth grounds for which an indictment may be set aside, do not provide for raising question of denial to accused of equal protection of the law guaranteed by Const. U. S. Amend. 14, as applied to selection of grand jury, nor point out time nor manner for presenting such a plea, the right to which cannot be denied.

**2. Indictment and information ⬦⟹137(2)—Challenge to array affects validity of every act of grand jury impaneled over such challenge, except where complaint is denial to a particular class, representation on grand jury, then invalid only as to crimes of members of class.**

A challenge to array of grand jurors, or to qualifications of individuals on panel, if supported, affects validity of every act of grand jury impaneled over such challenge, but such rule is not applicable where complaint is that defendant has been discriminated against as member of a class, by purposely denying such class representation on grand jury; indictments then being valid save as to those charging crime to members of class discriminated against.

**3. Constitutional law ⬦⟹46(2)—Special plea to abate prosecution or set aside indictment, if presented before pleading to indictment, held proper to assert claim for deprivation of equal protection of the law under federal Constitution.**

In absence of Code provisions for asserting deprivation of equal protection of law guaranteed by Const. U. S. Amend. 14, in impaneling of grand jury, a special plea to abate prosecution or set aside the indictment is timely if presented before pleading to the indictment.

**4. Constitutional law ⬦⟹213—Prohibition on states to deny equal protection of laws held to apply to all instrumentalities by which state acts.**

The Fourteenth Amendment to the federal Constitution, providing that no state shall deny to any person within its jurisdiction the equal protection of the laws, applies to all instrumentalities by which state acts, whether through state officers or commissions, since state cannot do indirectly what it could not do directly.

**5. Constitutional law ⬦⟹221—Under federal amendment prohibiting states from denying equal protection of laws, negroes cannot be intentionally excluded from jury service by jury commission.**

Primary purpose of Const. U. S. Amend. 14, was to protect the recently freed negroes in their constitutional rights.

**6. Constitutional law ⬦⟹45—Duty of court to hear issues raised by plea of denial of equal protection of laws through intentional exclusion of Roman Catholics from grand jury service.**

Where defendant filed a motion to set aside indictment charging sale of liquor, on ground that in selecting grand jury he had been purposely discriminated against, in that for some time persons of the Roman Catholic faith had been intentionally excluded from grand jury service, thereby depriving him of equal protection of law, guaranteed by Const. U. S. Amend. 14, it was duty of court to hear evidence on issue and determine its truth or falsity, especially in view of Const. Tex., Bill of Rights, §§ 4, 6, guaranteeing religious freedom and tolerance.

Appeal from District Court, Bee County; T. M. Cox, Judge.

Antonio Juarez was convicted of selling intoxicating liquor, and he appeals. Reversed and remanded.

B. D. Tarlton, of Corpus Christi, for appellant.

Sid B. Malone, Dist. Atty., of Beeville, and Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

---

⬦⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HAWKINS, J. Appellant is under conviction for selling intoxicating liquor, punishment being one year in the penitentiary.

When the case was called for trial, appellant filed a motion to set aside the indictment, claiming that the prosecution should be abated, because in the selection of the grand jury which returned the bill he had been purposely discriminated against because of his religious convictions, and had thereby been deprived of equal protection of the law guaranteed under the Fourteenth Amendment to the Constitution of the United States. The state excepted to this plea upon the ground, among others, that the plea should have been interposed by challenge to the array of grand jurors under articles 358 and 361, C. C. P. 1925 Revision (articles 409 and 412, Vernon's C. C. P.), and that the plea failing to show he had been deprived of an opportunity to challenge the array, his plea in the form of a motion to quash, or in abatement, came too late. In support of this exception, we are referred by the state's representatives to King, v. State (Tex. Cr. App.) 100 S. W. 387; Carter v. State, 39 Tex. Cr. R. 345, 46 S. W. 236, 48 S. W. 508; Id., 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; Staton v. State, 93 Tex. Cr. R. 356, 248 S. W. 356; Smith v. State, 97 Tex. Cr. R. 6, 260 S. W. 602; Robertson v. State, 92 Tex. Cr. R. 527, 244 S. W. 599. In none of these cases was the federal question under the Fourteenth Amendment involved except in the Carter Case, to which further reference will be made later. The subject of challenge to the array of grand jurors was also adverted to in Hickox v. State, 95 Tex. Cr. R. 173, 253 S. W. 823, and in Powell v. State, 99 Tex. Cr. R. 276, 269 S. W. 443; but in neither of them was said federal question involved. We mention all these cases because Carter's Case, supra, is cited with approval in all of them on the point of challenge to the array of grand jurors without taking note of a distinction which is apparent when the question raised is one of discrimination under the Fourteenth Amendment. The failure to draw the distinction has led to some confusion in our own decisions and may have misled the learned trial judge in the present instance.

[1, 2] Articles 358 and 361 of our Code of Procedure (1925 Revision), when construed together, provide that before. the grand jury is impaneled any person may challenge the array of jurors, or any particular person on the panel; that the challenge to the array can be made only upon two grounds: (1) That the persons summoned as grand jurors are not those selected by the jury commissioners; (2) or if summoned by an officer that he acted corruptly in performing his duty, and that in no other way than by challenge so made shall objections to the qualifications and legality of the grand jury be heard. Articles 505, 506, 511, and 512, C. C.

P. (1925 Revision), set forth the grounds for which an indictment may be set aside (Vernon's C. C. P. arts. 569, 570, 575, 576). It is apparent that our Code of Procedure does not, either by challenge to the array of grand jurors or by motion to set aside an indictment, specifically provide for raising the question of a denial to the accused of equal protection guaranteed by the Fourteenth Amendment to the federal Constitution, nor point out the time nor manner of presenting such a plea. It is certain, however, that under the decisions of the Supreme Court of the United States the right to present and have heard such a plea cannot be denied. A challenge to the array of grand jurors, or to the qualifications of any individual summoned on the panel, if supported, affects the validity of every act of the grand jury impaneled over such challenge. This cannot be true where the complaint is that accused has been discriminated against as the member of a class, by purposely denying such class representation on the grand jury. Indictments returned by such a grand jury would be perfectly valid save those which charge crime to members of the class discriminated against. Can it be said that a plea raising the federal point here involved questions either the legality of the grand jury or the qualification of any of its members? Is it not rather an attack on the validity of some particular act of the grand jury for the reason that the act done is directed against the member of a class against whom discrimination is charged in violation of the amendment in question? If it be the latter, would a challenge to the array be the proper procedure?

Reverting now to Carter v. State, 39 Tex. Cr. R. 345, 46 S. W. 236, 48 S. W. 508, in which arose the question under the Fourteenth Amendment: Upon original submission this court held, speaking through Judge Davidson, that the plea of discrimination should have been presented by challenge to the array of grand jurors, and not by motion to quash the indictment, but took no notice of the grounds upon which challenge to the array must be based. Upon motion for rehearing, it was pointed out that the grand jury had already been impaneled before Carter committed the offense. It was then held that under such circumstances the plea could be presented by motion to quash the indictment. In the opinion on rehearing Judge Davidson did take notice of the grounds supporting a challenge to the array, and points out that it did not include the grounds there urged. He says, "Where practicable, we believe the question should be raised by a motion to challenge the array of jurors," but immediately following this statement we quote his further language, italicizing the portion to which we desire to call particular attention:

"He did, after his arrest under the indictment and before his arraignment, move to quash the indictment on the ground that in the organization of the grand jury colored persons were discriminated against, in that none were selected by the jury commissioners. This was his first opportunity to test this question, and was proper practice, and timely, under the decisions of the Supreme Court of the United States, Neal v. Delaware, 103 U. S. 370 [26 L. Ed. 567]; United States v. Gale, 109 U. S. 63 [65] 3 S. Ct. 1 [27 L. Ed. 857]. *We think, under our statute, this question should have been raised in a motion to set aside the indictment or in the form of a special plea. True, this is not one of the causes stated in our Code of Criminal Procedure (articles 559, 561).* It will be seen that the enumeration of causes by the Code is not exclusive of other fundamental constitutional grounds. We quote from Williams v. State, 20 Tex. App. 359, as follows: 'There are two other pleas not specially mentioned or authorized in the Code, which are constitutional and inherent, to-wit, jeopardy and want of jurisdiction, and a special issue as to these may also be raised by a special plea, independently of any provisions of the statute.' This special plea is required to be verified by the affidavit of the defendant. Code Crim. Proc., art. 562. And so we take it that a fundamental question arising under the Constitution of the United States can be made by special plea outside of our statute."

It will be noted that the articles of our Code of Procedure referred to in the quotation relate to setting aside indictments, and not to those regarding challenges to the array of grand jurors. The final conclusion stated by Judge Davidson appears to be embraced in the italicized part of the quotation. That it was so understood by the court is borne out by the language in Thomas v. State, 49 Tex. Cr. R. 633, 95 S. W. 1069. We quote:

"Under our procedure his motion to quash the indictment, on the ground that he was not afforded an opportunity to challenge the array of the grand jury, is not well taken. Appellant was confined in jail at the time the grand jury was impaneled, and he should have made a request at that time to be brought into court so as to challenge the array. If he called to make such request, he cannot be heard afterwards to complain. Kemp v. State, 11 Tex. App. 174; Brown v. State, 32 Tex. Cr. R. 119, 22 S. W. 596; Barkman v. State (Tex.Cr.App.) 52 S. W. 69. *But it seems that, notwithstanding his failure to challenge the array, he can still present his motion to quash the indictment, because his race was discriminated against in the formation of the grand jury which returned the bill.* See Carter v. State, 39 Tex. Cr. R. 345, 46 S. W. 236, 48 S. W. 508; Id., 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839. *Appellant's motions both to quash the indictment on account of race discrimination and to quash the special venire on the same account are in proper form, and, under the decisions of the Supreme Court of the United States, were made in due time.*"

See, also, Roberts v. State, 81 Tex. Cr. R. 227, 195 S. W. 189.

[3] Thus it would seem that the court reached and announced the conclusion that although an accused might have raised the question by challenge to the array of grand jurors and had not availed himself of the opportunity, he could still resort to a special plea to set aside the indictment. McCline v. State, 64 Tex. Cr. R. 19, 141 S. W. 977, seems to have been decided without reference to Carter's Case or Thomas's Case, supra, and appears to be out of harmony with them, and, we think, should not be followed. If our Code of Procedure provided a specific method by which an accused should assert a claim that he had been deprived of equal protection of the law guaranteed him under the Fourteenth Amendment, we would follow it, believing the Supreme Court of the United States would respect the state's right to provide reasonable procedure available to accused in presenting such a plea; but, in the absence of any such rules of procedure, we conclude that a special plea to abate the prosecution or to set aside the indictment is timely if presented before pleading to the indictment. All cases holding or intimating to the contrary are overruled on this point.

The indictment upon which appellant was convicted was returned by a grand jury of Bee county at the October term, 1923, of the district court. In his special plea appellant alleges that he has been deprived of the equal protection of the law guaranteed under the Fourteenth Amendment to the Constitution of the United States, in that appellant is a Roman Catholic in his religious belief, and that in the county of the prosecution approximately 20 per cent. of the qualified jurors of said county are members of said religious faith; that notwithstanding this no person of that faith was represented on the grand jury which returned the indictment, and that such condition was not the result of accident or chance, but that since the spring term of 1919 of the district court of said county no Catholic had been appointed or served on the jury commission of said county, and that since said term of court only one Catholic had ever served on any grand jury impaneled in said county, and that no Catholic had served on any grand jury since the fall term of 1920. Appellant then pleads specifically the personnel of the jury commissions appointed by the court and of the grand jury selected by them for each term of court from the spring term of 1919 up to and including the term of court at which the indictment against appellant was returned, alleging that all members of said various jury commissions and the said grand juries were all of the Protestant faith, save and except one member of the grand jury for the fall term of 1920. Appellant further alleges that said discrimination against appellant and denial to him of the equal protection of the law was by failure of the court to appoint other than Protestants upon the jury commission

and by failure of the jury commissions to select any Catholics upon the grand jury; that this failure was the result of a design on the part of the officers to deny representation to the Catholics; that by reason of the discrimination against members of the Roman Catholic Church the rights of appellant guaranteed to him under the Fourteenth Amendment of the Constitution had been abridged; and that the indictment should be quashed and the prosecution against him abated. This special plea is verified by the affidavit of appellant. The bill of exception bringing this point forward for review recites that, after presenting said special plea, appellant asked leave of the court to offer witnesses to prove and sustain the allegations therein contained, that the state presented exceptions generally and specially to the plea and that appellant again tendered proof of its allegations, but that the court after hearing the exceptions overruled appellant's plea without investigation into the truth or falsity of the matters therein alleged and refused to hear testimony in support of the motion.

[4] That portion of the Fourteenth Amendment to the Constitution of the United States here invoked provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

"The provisions of the Fourteenth Amendment are not confined to the action of the state through its Legislature, or through the executive or judicial authority. Its clauses securing the equal protection of the laws relate to and cover all the instrumentalities by which the state acts, and so it has been held that whoever, by virtue of a public position under a state government, deprives another of any right protected by that amendment against deprivation by the state, violates the constitutional inhibition; and as he acts in the name of the state and for the state, and is clothed with the state's powers, his act is that of the state." 6 R. C. L. § 368, p. 373; Federal Statutes Ann., vol. 9, p. 393; Ex parte Virginia, 100 U. S. 347, 25 L. Ed. 676; Chicago, etc., R. Co. v. Chicago, 166 U. S. 234, 17 S. Ct. 581, 41 L. Ed. 979; Scott v. McNeal, 154 U. S. 45, 14 S. Ct. 1108, 38 L. Ed. 896; Missouri v. Dockery, 191 U. S. 170, 24 S. Ct. 53, 48 L. Ed. 133.

[5] The primary purpose of the Fourteenth Amendment was to protect the recently freed negroes in their constitutional rights, and has been held by the Supreme Court of the United States to prevent a discrimination against them by excluding them from service on grand juries and juries, where such exclusion was intentional and because of their race, although effected by the act of a jury commission, because said commission was the agency of the state government, through which grand jurors were selected. The application of the Fourteenth Amendment is illustrated by Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; Straud-

er v. Virginia, 100 U. S. 303, 25 L. Ed. 664; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Gibson v. Mississippi, 162 U. S. 565, 16 S. Ct. 904, 40 L. Ed. 1075; Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667; Smith v. Mississippi, 162 U. S. 592, 16 S. Ct. 900, 49 L. Ed. 1082; Williams v. Mississippi, 170 U. S. 213, 18 S. Ct. 583, 42 L. Ed. 1012.

In American Sugar Refining Co. v. State of Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, Justice Brown states the general scope of the Fourteenth Amendment, and the discrimination it is intended to prevent, in the following comprehensive language:

"Of course, if such discrimination were purely arbitrary, oppressive, or capricious, and made to depend upon differences of color, race, nativity,· religious opinions, political affiliations, * * * such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less favored classes."

- In bringing about a violation of the provisions of the Fourteenth Amendment, the state cannot do indirectly through its officers or agents that which it could not do directly by legislative act. If the Legislature of the state should pass a law saying that hereafter no man holding to the Baptist religious faith, or the Methodist religious faith, or to the Roman Catholic religious faith, should ever be permitted to serve on a grand jury in this state, and a party adhering to the religious faith so designated should claim that by such legislative act his rights under the Fourteenth Amendment had been violated, the validity of such a law could never be sustained. This, as we understand it, is what appellant alleges in his plea, except that he avers the discrimination was designedly brought about through subordinate officers and agents of the state.

The language of our state Constitution has no application save in a persuasive way to the plea of appellant which invokes the protection of the Fourteenth Amendment, but we think it not amiss to here call attention to the provisions of our Constitution with reference to religious freedom and tolerance. Section 4, art. 1, Bill of Rights, Constitution of the State of Texas, reads:

."Sec. 4. No religious test shall ever be required as a qualification to any office, or public trust, in this state; nor shall any one be excluded from holding office on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being."

Section 6 of said article 1 reads, in·part, as follows:

"* * * No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion, and no preference shall ever be given by law to any religious society or mode of worship. But it shall be the duty of the Legislature to pass such laws as may be necessary to protect equal-

ly every religious denomination in the peaceable enjoyment of its own mode of public worship."

[6] It is well settled that when a plea such as was here interposed by appellant is meritorious on its face raising the federal question, it is the duty of the court to hear evidence upon the issue and determine the truth or falsity of the allegations supporting the plea. Whitney v. State, 42 Tex. Cr. R. 283, 59 S. W. 895; Carter v. State, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839. Other authorities are collated under subdivision 8, § 586, Branch's Ann. Tex. P. C.

The learned trial judge was in error in refusing to hear evidence tendered to sustain the averment of the special plea, which demands the reversal of the judgment. It is so ordered, and the cause is remanded.