Automobiles ⬅357—Refusal to submit issue of lack of criminal intent and guilty knowledge in driving automobile with muffler cut-out, and charge to convict if defendant drove car with cut-out, held error under evidence (Pen. Code 1925, art. 797a).

In prosecution under Pen. Code 1925, art. 797a, for unlawfully driving an automobile equipped with muffler cut-out on public highway, refusal to submit issue of mistake of fact in using car without knowledge that it was equipped with cut-out, and under circumstances not showing want of proper care by defendant, and charging jury to convict if defendant drove automobile equipped with cut-out on public highway, held error, under the evidence.

Commissioners' Decision.

Appeal from Eastland County Court at Law; Tom J. Cunningham, Judge.

W. C. Kellum was convicted of unlawfully driving an automobile equipped with a muffler cut-out on a public highway, and he appeals. Reversed and remanded.

S. W. Smith, of Desdemona, for appellant.
A. A. Dawson, State's Atty., of Austin, for the State.

MARTIN, J. Appellant was charged under article 797a, P. C., with unlawfully driving an automobile equipped with a muffler cut-out on a public highway, and fine of $10 was assessed against him.

Appellant's testimony in substance showed that he was working for an automobile concern and that his duties consisted of selling gasoline, oil, spare parts, and bookkeeping for the firm, but that he had nothing to do with selling automobiles or taking in old ones; that the car in question had just been taken in by his employer and was an old car. He started to dinner on the day in question, and, observing this car in front of the garage, got in it to hurriedly ride to his noon luncheon, not knowing that a muffler cut-out was on the car. He further testified that the car was old and worn and that the muffler accidentally jolted open, and he immediately stopped and fixed it, going at once to the garage with it and taking it off.

Appellant claims this testimony raised the issue of a mistake of fact, which should have been presented to the jury. In other words, if appellant used the car under the circumstances mentioned without any knowledge that it was equipped with a cut-out and under circumstances not showing a want of proper care on his part, his act would not be a violation of law. We think this constituted a defense and should have been submitted to the jury either in the form requested by appellant or some similar form. The evidence supported appellant's theory that his action in the matter was without any criminal intent and without any guilty knowledge and was under circumstances which would not impute to him a want of proper care in failing to ascertain the true facts. Authorities which support these views are as follows: Davies v. State, 98 Tex. Cr. R. 408, 265 S. W. 1114; Stalling v. State, 90 Tex. Cr. R. 313, 234 S. W. 914; Vaughn v. State, 86 Tex. Cr. R. 255, 219 S. W. 206, and authorities collated under article 41, defining mistake of fact, Vernon's Penal Code, vol. 1, p. 41. The court failed in any way to give a defensive charge for appellant, and charged the jury to convict if appellant drove an automobile equipped with a cut-out on a public highway, which amounted under the circumstances of this case to a peremptory instruction for the state.

Other points presented by appellant are believed to be without merit and are overruled.

For the error discussed, the judgment is reversed and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

## ROSS v. STATE. (No. 11646.)

Court of Criminal Appeals of Texas. May 9, 1928.

Rehearing Denied June 23, 1928.

1. Grand jury ⬅8—Jury ⬅33(1)—That no negroes had been drawn on grand or petit juries for many years does not alone show intentional discrimination.

Fact that for many years in certain county no negroes had been drawn or served on grand or petit juries does not alone show intentional discrimination against them because of their race or color.

2. Grand jury ⬅8—Jury ⬅33(5)—In prosecution of negro, evidence held insufficient to show jury commission had discriminated against negro race in selecting grand and petit jury.

In prosecution of negro for murder of white man, evidence held insufficient to show that negro race had been discriminated against by jury commission in selection of grand jury which returned indictment and in selection of petit jury from which venire was drawn, especially where offense for which defendant was tried had not been committed when jury commissioners selected jurors.

3. Homicide ⬅170—Evidence that witness followed tracks from place of killing for distance of two miles held properly admitted.

In prosecution for murder, admission of testimony that witness followed tracks from place

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of killing for distance of two miles *held* not error.

**4. Homicide ⬡338(3)—Testimony witness who followed tracks from point of homicide found identical tracks farther on held not reversible error, in view of other evidence identifying defendant.**

In prosecution for murder, testimony by witness who had followed tracks from place of killing for distance of two miles, that tracks found farther on were identical with those he had followed from point of homicide, *held* not reversible error, in view of other evidence on point of identity of defendant as one who did killing.

**5. Criminal law ⬡537—In prosecution for murder while perpetrating robbery, testimony that witness from information received from defendant found where stolen money sack was burned held admissible (Code Cr. Proc. 1925, art. 727).**

In prosecution for murder committed in perpetration of robbery, testimony that witness from information received from defendant found where stolen money sack was burned and found in ashes one copper cent *held* properly admitted; it being immaterial whether defendant was under arrest at time he gave witness such information, under Code Cr. Proc. 1925, art. 727.

**6. Criminal law ⬡720(1)—District attorney may refer in argument to defendant's testimony as relating to voluntary character of confession, where defendant testified on that point alone.**

Where, in prosecution for murder, court submitted question as to voluntary character of confession, and defendant testified on that point alone, district attorney had right to refer in argument to defendant's testimony as it related to that issue.

**7. Criminal law ⬡369(3)—Testimony that witness received wound from same load of shot which killed deceased held not to relate to another and different offense.**

In prosecution for murder committed in perpetration of robbery, witness riding with deceased *held* properly permitted to testify that he received wound in knee caused by one of balls from same load of shot which killed deceased, as against objection that testimony related to another and different offense.

**8. Homicide ⬡165—In murder case, admission of testimony as to deceased's age and family relation held not prejudicial error.**

In prosecution for murder, admission of testimony that deceased was about 33 years of age, married, and had three children, *held* not to constitute prejudicial error.

On Motion for Rehearing.

**9. Criminal law ⬡1090(13)—Complaint as to argument of counsel must be preserved by bill of exception (Code Cr. Proc. 1925, art. 667).**

Where there is no bill of exception complaining of argument of counsel, in prosecution for murder, there is nothing before the reviewing court in regard to such matter, under Code Cr. Proc. 1925, art. 667.

Appeal from District Court, Nacogdoches County; C. A. Hodges, Judge.

Tom Ross was convicted of murder, and he appeals. Affirmed.

R. A. McAlister, of Nacogdoches, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

HAWKINS, J. Conviction is for murder; punishment being assessed at death.

Appellant is a negro. The party killed was a white man. The murder was committed in the perpetration of robbery. Appellant sought to set aside the indictment and to quash the special venire, upon the alleged ground in each instance that the negro race had been discriminated against by the jury commission in the selection of the grand jury which returned the indictment and in the selection of the petit jury from which the venire was drawn. Bills A and B.

[1, 2] It may be stated at the outset that the offense for which appellant was tried had not been committed when the jury commissioners selected grand and petit jurors; neither does it appear that any cases or charges were pending against any one of the negro race which the grand jury so selected would be called upon to investigate or the petit jury to try; hence there could have been no purposeful discrimination against appellant nor any other individual of the negro race. Appellant's claim of discrimination appears to be largely based on the fact that for many years in Nacogdoches county no negroes had been drawn or served on the grand or petit juries. That fact alone would not show an intentional discrimination against them because of their race or color. Roberts v. State, 81 Tex. Cr. R. 227, 195 S. W. 189; Pollard v. State, 58 Tex. Cr. R. 299, 125 S. W. 390; Mitchell v. State, 105 Tex. Cr. R. 297, 288 S. W. 224. Appellant seems to have been allowed great latitude in the investigation of the question raised. It is manifestly impracticable to set out in an opinion all the evidence heard upon the point, but only our conclusions therefrom. It was established that in Nacogdoches county there were something over 6,000 voters, which included whites and negroes. The poll tax lists showed that 410 negroes paid their poll taxes. It was not shown how many of the negro poll tax payers were men and how many were women, nor how many could read and write, nor how many were householders in the county or freeholders in the state; that is, it does not appear how many of the negro poll tax payers were qualified jurors. It would seem, therefore, that the jury commissioners would have

been compelled to go to unusual trouble and investigation to ascertain what negroes, if any, had the necessary legal qualifications as grand or petit jurors. It was further shown that no instructions were given to the jury commissioners by the court relative to omitting negroes from the juries. In selecting the grand jury the commissioners picked 16 men from the various localities in the county, taking only such men as they were acquainted with personally and whom they believed to be suitable as grand jurors. In selecting the petit jury they used the poll tax list, but chose as jurors only those whom they thought to be the best material under the general instructions of the court. They knew the grand jurors and petit jurors chosen were all white men, but said there was no purpose to discriminate against any race or color, and nothing was said or done in the way of such discrimination; that in selecting the jurors the question of race was not mentioned. One of the jury commissioners testified that he did not think he would have chosen a negro on the jury; that he knew of some negroes who were qualified jurors, but would not select them on the jury; he did not know whether they were qualified jurors at the time he was serving as one of the jury commissioners. The most favorable light for appellant under which the evidence last referred to can be viewed seems to be that at the time the witness was testifying he knew some negroes who were qualified jurors, but did not know such fact at the time he was serving as one of the commissioners. From the entire evidence brought forward we conclude that the omission to draw any negroes upon the grand jury or petit jury was not the result of purposeful discrimination against the negroes because of their race or color, without which intentional discrimination appellant's complaint cannot be sustained. Carter v. State, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; 39 Tex. Cr. R. 345, 46 S. W. 236, 48 S. W. 508; Franklin v. South Carolina, 218 U. S. 167, 30 S. Ct. 640, 54 L. Ed. 985; Hubbard v. State, 43 Tex. Cr. R. 566, 67 S. W. 414; Roses' Notes on U. S. Reports, vol. 18, pp. 511, 512.

Dave Patterson, deceased, was an employee of a lumber company and on August 10, 1927, with one Williams, went to Nacogdoches for the purpose of getting the pay roll for the company. It seems the sack with the pay roll in it was placed under the front seat of the car and inferentially it appears that a "dummy" pay roll in a similar sack was placed on the floor of the car. While Patterson was on his way to the lumber camp with the pay roll he was waylaid at a point on the road called "Moss Hill," shot, and killed, the same shot wounding Williams. The "dummy" pay roll was taken. Appellant worked for the same company as Patterson. Appellant had requested his pay several days in advance of the regular pay day and represented that he intended to visit relatives in Mississippi. He ascertained by inquiry that the next pay roll would amount to between $600 and $2,000. By his own confession placed in evidence by the state appellant admits borrowing a shotgun, going with it to the scene of the killing, secreting himself in the bushes, watching until Patterson came along the road, shooting him, getting the money sack, and making his way back to Nacogdoches. He hid the shotgun with which the killing was accomplished in one place and burned the money sack in another. It was shown by other witnesses that he borrowed the gun; that he was seen going in the direction of the place where the homicide was committed, and within 20 minutes after the homicide was recognized by a witness who heard the shots and saw appellant traveling away from the place, he having a shotgun at the time. Appellant told the officers where he had secreted the gun and burned the money sack, went with them and pointed out the gun, and described as best he could where the sack had been burned. Upon this information officers found where a fire had been made, and in the ashes found a copper cent. Appellant was with them and said that was the point where he had covered the sack with leaves and burned it.

[3, 4] Bills of exception numbers 4, 5, 6, 7, and 8 relate to objections to testimony given by witness Stone relative to tracks found by him at the place of the homicide, and followed, and similar or the same tracks at another place. It may be stated that none of the bills, perhaps if strictly construed, can be said to be sufficient. Standing alone none of them sets out enough of the evidence and surrounding facts to make plain the matter complained of; each bill consisting largely of grounds of objection only. However, in one of the bills we are referred to the statement of facts for Stone's testimony. Of course, his evidence must be considered with all the other facts found in the record. It was shown that appellant wore a No. 10 shoe. Stone also wore a No. 10 shoe. Appellant's shoes were exhibited at the trial. They were compared with witness' shoes and were shown to be exactly the same size as Stone's, with the exception that appellant's were slightly narrower across the toe. Stone testified that the tracks found by him at the place of the homicide were identical in size with his own shoe, with the exception stated. As we understand his testimony, he followed these tracks consecutively from that point for about two miles, they going by the point where appellant was seen and recognized as he was going away from the scene of the homicide. Stone said as far as he followed the track—about two miles—they were the same tracks. He then testified that he did not find that track any more until he got in possession of "some other news; that he went to that place and

found the same identical track, and it was leading east into what was known as Sand Ridge." This was the course appellant followed in his flight from the scene of the killing as shown by his confession and the testimony of other witnesses. There apparently could have been no error on the part of the court in admitting Stone's testimony in regard to following the tracks from the place of the killing for the distance of two miles. If error was committed, it was in permitting the witness to say that the tracks found at "Sand Ridge" were identical with those which had previously been followed by him. However, if the measurement of the tracks made by Stone in comparison with his own shoe be thought too indefinite and inaccurate—as contended by appellant—to permit the witness to give testimony that the tracks found farther on were identical with those he had followed two miles from the point of the homicide, it does not occur to us that receiving such evidence could possibly be held such error as to demand a reversal, in view of all other evidence in the record upon the point of identity of appellant as the one who did the killing.

[5] Bill No. 9 brings forward complaint because witness Vaught was permitted to testify that from information received from appellant he found where the money sack was burned, and found in the ashes one copper cent. It would be immaterial that appellant was under arrest at the time he gave the witness the information, if in connection with it he made "statements of facts or circumstances that are found to be true, which conduce to establish his guilt." Article 727, C. C. P. 1925. We think under the statute referred to the evidence was unquestionably admissible. It may be stated in this connection that witness Stone gave substantially the same testimony to which no exception seems to have been reserved.

[6] In the record are several objections to the argument of the district attorney. They are not brought forward as bills of exception. As presented we are at some loss to understand just what happened. From one objection it appears that the attorney said in argument, "Why didn't you have the witness here to dispute the confession?" Appellant briefs the point as though the objection lodged to such argument was that it was a reference to the failure of appellant to testify. The only objection urged was that the argument was extraneous, inflammatory, prejudicial, and outside the record. Then follows this notation, signed by the presiding judge:

"The same presented, considered, and given during the argument and ordered filed as a part of the record in this cause which is accordingly done this 24th day of September, A. D. 1927."

The objection was preceded with a request to have the argument withdrawn. Whether

7 S.W.(2d)—68½

the notation quoted means that the judge gave the instruction, or whether it means that the judge was only intending to perpetuate in the record the objection made, we are unable to say. At any rate, the record does disclose that a question arose as to the voluntary character of appellant's confession. Appellant was permitted to take the witness stand and testify upon that point alone. So it would appear that the point made in the brief as to the argument is untenable under the circumstances of this case. The court submitted the question as to the voluntary character of the confession, and, appellant having testified upon that point, counsel had a right to refer to his testimony as it related to that issue.

Complaint is brought forward (bill of exception No. 1) that the court declined to permit appellant to answer a question touching the voluntary character of his confession. We are referred by the trial judge to the statement of facts upon the point and we find therefrom that appellant was permitted to testify fully upon the issue involved and that the court was correct in sustaining the state's objection to the particular question set out in the bill on the ground that it was leading and suggestive.

[7] We find no merit in appellant's bill of exception No. 2 which brings forward complaint because the witness Williams was permitted to testify that he received a wound in the right knee; the objection being that the testimony related to another and different offense than the one for which appellant was upon trial. Williams was riding in the car with deceased at the time he was killed and one of the balls from the same load of shot which killed deceased struck witness in the knee.

[8] Over appellant's objection the state was permitted to prove that deceased was about 33 years of age, married, and had three children. We fail to see the pertinency of showing deceased's family relations, but at the same time cannot perceive how it could be prejudicial to appellant under the facts.

The judgment is affirmed.

### On Motion for Rehearing.

LATTIMORE, J. We have read with interest the motion of appellant, and considered as best we can the points discussed therein. We take it that the question of discrimination against the race to which appellant belongs must be decided on what the jury commission actually did in the drawing of the grand jury and of the venire, and not from what said jury commission thought or felt. Each of the commissioners testified positively that they did not discriminate against the negro race, and that they knew most of the jurors, and that they selected the grand jury from persons whom they knew and believed to be

of fitness for such position. The number of the qualified jurors in the county being shown to be about 6,000, and there being only about 400 qualified jurors among the negro population of the county, and there being an utter absence of any testimony showing that there was an intentional or purposed setting aside or disregarding or passing over the names of any qualified negro juror, we are unable to agree with appellant that there is any testimony supporting his averment of discrimination on the part of said jury commission. It appears from the testimony introduced that at the time the grand jury was drawn, and also at the time the petit jury was drawn, this particular crime had not been committed, nor did the jury commissioners know of any negro who was to be investigated by the grand jury, or who might be tried by the petit jury so drawn. Each of the jury commissioners testified that there was no discussion by them as members of such commission, and no reference made to any race consideration in the matter of drawing said grand and petit jurors. There were approximately around 550 white jurors in the county who were not drawn on either this grand or petit jury. Certainly the mere fact that such persons were not drawn on the jury could not be taken as an intentional discrimination against them or any holding on the part of the jury commissioners that such people were unfit or unworthy to be summoned on the jury. The mere fact that persons, either white or colored, are not summoned on the jury, does not establish any intentional discrimination against such persons.

[9] Much of appellant's motion relates to our disposition of his complaint at the argument which he contends was made by state's counsel. Turning to the record, we find 11 bills of exception, none of which complain of any argument. Article 667, C. C. P. 1925, provides that all complaints of proceedings in any case must be brought forward by bills of exception, signed and approved by the judge of the court, "in order that such decision, opinion, order or charge may be revised upon appeal." If one objects to argument and presents to the court below a special charge asking that the jury be instructed not to consider such argument, which charge is given, and the record stop there, we necessarily would be forced to conclude that counsel for the accused was satisfied when such charge was given and desired to make no further complaint. Assuredly, if not so satisfied, under the plain direction of our statute, he should make known his dissatisfaction by bill of exceptions. There being no bill complaining of any argument, there is nothing before us in regard to such matter. No complaint is made by exception of any improper use of testimony as to the age of deceased,

or the fact that he was married and had children. The testimony to such facts was objected to as having no bearing on the case and as being inflammatory and prejudicial. Said testimony may and may not have had bearing upon the case. The trial judge may have been of opinion and may have believed it to be material. Nothing in the bill presenting this complaint shows to the contrary.

Being unable to agree with appellant, the motion for rehearing will be overruled.