GENARO LUGO V. THE STATE.

No. 19994.   Delivered December 7, 1938.
Rehearing Denied February 8, 1939.

The opinion states the case.

*M. C. Gonzales*, of San Antonio, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder; the punishment assessed is death.

The record shows that on the night of February 15, 1938, appellant killed Dick Chisholm in the town of Odem and then took from his person $8.00 in money, a pistol and a pocket knife.

A few days after the offense was committed, appellant was

arrested in Corpus Christi and made a written confession to the officers in which he admitted the killing. He stated that Chisholm had struck him on the head with a pistol some two weeks prior to the time of the alleged offense. That on the night of the homicide, he was in the town of Odem, watching for the deceased and intending to "shoot it out with him." That when he saw him on the street after midnight, he went up to him, pulled out his pistol and told the deceased that they were going to kill each other. That he got in the first two shots and deceased fell without firing a shot; that as the injured man lay upon the street mortally wounded, he walked up to the body and fired a third shot into his head and then robbed him. He told the officers where he had put the pistol, the pocket knife, and what he had done with the money. The officers found the property at the places mentioned by him. Appellant did not testify or offer any defense.

His first complaint is that the court erred in declining to quash the indictment and special venire panel, based on the ground of discrimination against the Mexican race of which he was a member. The court, after hearing the testimony offered by appellant in support of his motion, overruled it and by timely exception appellant has brought the matter before us for review. Obviously the only question presented is whether or not race discrimination was practiced in the selection of grand and petit jurors for said term of court. This was a matter addressed to the discretion of the court, and in the absence of a showing of an abuse of discretion we would not be authorized to disturb his findings.

Mr. Vickers, a deputy tax collector, testified that there were between three and four hundred Mexicans in San Patricio County who were qualified voters, but he failed to state how many, if any, could read, write and understand the English language. Mr. Hunt, the sheriff, testified that he had lived in the county for thirty-six years and had been sheriff for fifteen years. That during his tenure of office, he had called citizens of the Mexican race to do jury service, but could remember only two that had served as jurors. That very few of the citizens of the Mexican race in the county were able to read and write the English language.

Mr. Scull, Mr. Rosson, Mr. East and Mr. Beall testified that they had served as jury commissioners and drew the jury for that term of court; that they selected the men best qualified to perform jury service. That there was no discrimination with regard to whether they were white, black or any other color.

That had they known of any citizen of the Mexican race qualified for service they would not have hesitated to place his name on the list of jurors for the term. Rodriquez testified that he lived in precinct number two of San Patricio County and knew of three men of Mexican descent who lived in that precinct who could read and write the English language.

The burden of proof rested on the appellant to show an intentional exclusion by the jury commissioners of members of his race from jury service. See Lewis v. State, 42 Tex. Crim. Rep., 278; Thomas v. State, 49 Tex. Crim. Rep., 633 (640). In this case he has failed to discharge said burden. On the contrary, the jury commissioners whom he introduced as witnesses testified that they would have placed Mexicans on the jury had qualified ones appeared on the tax rolls. See Sec. 586 Branch's Ann. Penal Code and authorities there cited.

Appellant, in his motion for a new trial, complains for the first time because the court declined to sustain his challenge for cause to some of the prospective jurors because they were, or had been at some former time, peace officers, and the man he had killed was a peace officer. The fact that a prospective juror is a peace officer is not a ground for a challenge for cause. See Sec. 549, Branch's Ann. P. C., p. 282; Trinkle v. State, 59 Tex. Crim. Rep., 257; Mingo v. State, 133 S. W., 882.

He also contends in his motion for a new trial that the court erred in declining to sustain his challenge for cause to the prospective juror, Mathis, a night watchman, who on his voir dire stated that he had read in the newspapers an account of the alleged offense and had heard it discussed. That from what he had heard and read, he had formed an opinion as to the guilt or innocence of the accused.

It may be that the court should have sustained the challenge, but appellant peremptorily challenged the prospective juror. No complaint is made that by reason of the court's ruling he exhausted his peremptory challenges and then had to accept an objectionable juror. In the absence of such a showing, we fail to see how harm could have resulted to him. Moreover, no bill of exception was taken to the ruling of the court. See Sec. 543, Branch's Ann. P. C. and authorities there cited; Bass v. State, 59 Tex. Crim. Rep., 186 (127 S. W., 1023); Powers v. State, 23 Tex. Crim. Rep., 61.

Appellant also complains of the introduction in evidence of his confession made to the officers after he was duly warned, and which was reduced to writing and signed by him in the

presence of two subscribing witnesses as prescribed by statute. There is no merit to his contention in this respect. All of the requisites of the statute were complied with. See Art. 727, C. C. P.

Moreover, appellant upon being arrested for the offense made an oral statement to the officers in which he admitted having committed the homicide and robbing the deceased. He gave to the officers a description of the property which he had taken from the body and told them where he had secreted the same. Pursuant to this information, the officers found the property at the places designated by him. Under the facts above stated, the statement which he made to the officers showing his connection with the offense became admissible and his written confession made subsequent thereto was in harmony therewith. See Art. 727, C. C. P.; Branch's Ann. P. C. Sec. 63, p. 36 and authorities there cited; Johnson v. State, 44 Tex. Crim. Rep., 334 (71 S. W., 25).

Appellant, in his motion for a new trial, also complains of certain testimony given by Ike Elliff, S. F. Hunt and Victoria Ybarra. In said motion, he sets out the questions and answers of each of said witnesses. He has not followed the proper procedure in this respect, for he has failed to properly embody in narrative form the testimony of each witness with his ground of objection thereto in a separate bill. See Art. 760, C. C. P.; Monday v. State, 124 Tex. Crim. Rep., 44; Shepherd v. State, 95 S. W. (2d), 438; Hunnicutt v. State, 97 S. W. (2d), 957. However, since this is a case in which the extreme penalty has been inflicted, we have carefully examined the testimony objected to and reached the conclusion that it was competent, material and pertinent to the matter under investigation.

We have carefully examined all of the matters complained of by the appellant but fail to find any reversible error in the proceedings. Therefore, the judgment of the trial court is in all things affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

#### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—In his motion for rehearing appellant renews his contention that in selecting the grand jury which

indicted him the jury commissioners discriminated against the Mexican race. It is pointed out in the motion that G. D. Pena testified that in the City of Taft alone there lived about 100 people of the Mexican race who were property owners, and all over the age of 21 years. In connection with his testimony, it is shown that the witness named 27 men who spoke the English language. Again, our attention is directed to a list of qualified Mexican voters in San Patricio County showing that at the time of the return of the indictment there were 287 men of Mexican extraction who were qualified to vote. It is stated in the motion that the witnesses Pena and Rodriquez testified that there were 304 persons of the Mexican race who were qualified voters, were property owners and were able to read and write the English language. However, in this connection, it is stated in the motion that the witnesses only named 30 persons out of the 304 deemed by them to be qualified for grand jury service. Further, it appears that only two or three Mexicans had ever been selected for jury service in San Patricio County.

Looking to the testimony of the witness Pena, it is observed that he stated that not all of the men he had referred to as being able to read and write the English language were property owners. On cross-examination he said: "Their knowledge of speaking and reading and writing the English language is very limited." Again, he testified: "The majority of the persons that I have named would require an interpreter if it were necessary for them to come to court here and testify in a case. Some of them can speak good English but it is a fact that practically every Mexican I have heard testify in the courtroom—and I have been in the courtroom quite a bit— had to have an interpreter in order to testify. Some of them can speak good English and I really don't think they would have to have an interpreter, but I have seen cases where it is necessary. There are lots of Mexicans that speak good English and understand it that would have to have an interpreter to fully understand what was going on in court." On redirect-examination he testified: " I know that there are a good many persons of the Mexican race who are citizens of the United States, tax-payers of San Patricio County, able to read and write the English language, and qualified to serve on juries."

The witness Rodriguez testified that he knew about 25 Mexicans in San Patricio County who were tax-payers and able to read and write the English language. He further testified that in his opinion these men were capable of understanding court procedure. However, he said: "I never talked to them in the

English language and it is just my opinion that they could understand the court."

We quote from the testimony of Mr. Hunt, sheriff of San Patricio County, as follows: "During the 15 years in which I have been sheriff of San Patricio County, I have called some United States citizens of Mexican extraction to do jury service in this court. I don't recall just how many but I know it was not very many. About two or three years ago, it seems to me that I summoned one Mexican to do jury service that served during a whole term of court, although he didn't get on any juries, but was just here. I think he was the only Mexican that I summoned for jury service at that time. I don't recall just how long prior to that time it had been since there was another Mexican summoned for jury service here in this court, but I think there was one summoned about 10 or 12 years ago, something like that. To the best of my recollection there has been only two Mexicans called for jury service during the 15 years that I have been sheriff of this county, neither of whom were selected for jury service, although it seems to me that we did have one or two that did some jury service here a good while back—a good many years ago. With the exception of about five that I named, I don't know whether or not any of the 304 names contained on this list are citizens of the United States. Very few of the Mexicans that I know in the county are able to read and write the English language that are over 21 years of age. * * * I know as a fact of my own knowledge that the majority of the Mexican population of this county are unable to speak intelligently in English and are unable to read and write the English language. I speak the Spanish language myself and I know it to be a fact that we have to have an interpreter for Mexicans in the justice court. It is a fact that practically every Mexican witness who has testified in this courtroom during the 15 years that I have been sheriff of this county has had to have an interpreter."

The jury commissioners who selected the grand jury gave testimony warranting the conclusion that they did not intentionally discriminate against the Mexican race. We quote from the testimony of one of the commissioners, as follows: "In serving as a jury commissioner and drawing grand and petit jurors I endeavored to select what in my judgment was the men best qualified to serve as jurors. I used my best judgment in selecting the names of the jurors and did not discriminate against anyone simply because of his race."

We are of opinion that the evidence warranted the conclu-

sion that very few Mexicans over 21 years of age were able to read and write the English language. The trial judge heard the testimony of the sheriff, who knew the citizenship of the county. We again quote from his testimony: "Very few of the Mexicans that I know in the county are able to read and write the English language that are over 21 years of age." Among other things, it is provided by the statute that no person shall be selected to serve as a grand juror unless he is able to read and write. Article 339, C. C. P. Viewing the testimony in its entirety, we are constrained to hold that appellant has failed to discharge the burden of showing that there was purposeful discrimination against Mexicans because of their race. See Ross v. State, 7 S. W. (2d) 1078. Hence we are constrained to overrule appellant's contention.

Appellant also complains of the action of the court in overruling his challenge for cause to some of the prospective jurors. With reference to this matter, suffice it to say that appellant has failed to bring forward a bill of exception. Under the circumstances, the action of the trial court cannot be reviewed.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.